PINK L. PARRISH v. JOHN R. RALLS ET AL.

Decided November 26, 1910.

**1.—Removal of County Seat—Center of County—Certificate of Commissioner.**

The mere fact that a former certificate by the Commissioner of the General Land Office fixed the center of a county at another and different point from that fixed by a more recent certificate, would not alone render the later certificate void.

**2.—Same—Discrepancy in Certificates—Presumption.**

When a certificate by the Commissioner of the Land Office fixes the center of a county at a different point from that fixed many years before, in the absence of a direct attack upon the later certificate on the ground of fraud or mistake, it will be presumed that a difference in the data on file in the Land Office (from which the calculation must be made) was the cause of the difference in the certificates. Neither the Constitution nor the statutes limit the

people of a county to the right to demand, or the Commissioner of the Land Office to the issuance of, only a single original certificate as to the center of a county. This may be done as often as occasion requires.

### 3.—Same—Interest of County Judge.

If the act of a county judge in requesting the Commissioner of the Land Office that he designate the center of the county, and if the act of the Commissioner, in complying with such request, be legal, then neither the motive of the county judge in making the request, nor the fact that he was pecuniarily interested in a removal of the county seat, which depended upon the decision of the Commissioner, would be material.

Appeal from the District Court of Crosby County. Tried below before Hon. Jo A. P. Dickson.

*J. W. Burton* and *Graham & Dalton,* for appellant.

*Cooper & Stanford,* for appellees.

CONNER, CHIEF JUSTICE.—This is an appeal from an order granting a temporary injunction. The petition therefor sets out that the petitioners are taxpayers and owners of real estate in the town of Emma, Crosby County; that the defendants constitute the Commissioners Court of Crosby County, of which Pink L. Parrish is the county judge, and the others, commissioners; that Emma for many years had been the duly established county seat of Crosby County, but that on August 8, 1910, an application, signed by the requisite number of freeholders, was filed with said county judge requesting an election to determine whether the county seat should be removed from Emma to Crosbyton, and that the election was ordered for September 17, 1910, and resulted in a total vote of three hundred and eighteen, of which Emma received one hundred and twenty and Crosbyton one hundred and ninety-eight votes. The petition further alleges that on August 8, 1910, said county judge had become financially interested by virtue of contracts with the owners of the site to convey to him certain town lots in Crosbyton in order to induce said Parrish to become a partisan therefor; that the relation between the county judge and the owners of Crosbyton was fraudulent and concealed from the public; that at and before said order for election the center of Crosby County had been fixed by certificate from the Commissioner of the General Land Office, as provided in the Constitution and laws of the State, so as to exclude the site of Crosbyton, and include Emma, within a radius of five miles from said center; that the certificate of the Commissioner had been duly recorded in Crosby County and acted upon since September, 1891, as was well kown to said county judge; that nevertheless said Parrish, "with the fraudulent intent and purpose of procuring another and different designation of the center . . . and of carrying out his fraudulent purpose of aiding and abetting the owners of the townsite of Crosbyton and making same the county seat of Crosby County," by letter of date August 13, 1910, requested the

Commissioner of the General Land Office to designate the center of Crosby County, the Commissioner being thereby led to believe that no previous designation had been made; that on August 26, 1910, the Commissioner made a plat, certifying thereto, which designated a point as the center of the county more than five miles from Emma, but less than that distance from Crosbyton. It was further alleged that between the first and second certificates there had been no change in the outer boundary lines of the county. That at the time of the issuance of the last certificate the Commissioner was ignorant of the former certificate, and, upon later being informed, sought by letter to withdraw the certificate last sent, but that said Parrish declined to return it and caused its record and will, unless prevented, act thereon in canvassing the votes and declaring the result of said election. Wherefore it was prayed that said last mentioned certificate of the Commissioner of the General Land Office be declared null and void, and that said judge and commissioners be enjoined from considering the same in declaring the result of the election.

Appellant insists that appellees have no such interest as will entitle them to the relief extended, or that, if so, the question presented is a political one, which the court can not consider in this form of action. But whether these contentions should be sustained upon the authority of Townsen v. Mersfelder, 49 Texas Civ. App., 289 (109 S. W., 420), and Robinson v. Wingate, 36 Texas Civ. App., 65 (80 S. W., 1067), s. c., 98 Texas, 267, or the case distinguished from those mentioned and the contentions denied because of the opinions in Norman v. Thompson, 96 Texas, 250, and Oden v. Barbee, 103 Texas, 449, we need not determine. For, regardless of these questions, we are of opinion that the petition shows no sufficient grounds for an injunction.

It may be seen from the statement we have given that the petition fails to negative changes of lines of surveys within the outer boundary lines of the county, and fails to connect the Commissioner with the fraud alleged, or in direct terms to deny the accuracy of the certificate of which complaint is made. Chapter 5, title 23, of the Revised Statutes, regulates the manner of the establishment and removal of county seats. In article 816 of that chapter it is provided, so far as pertinent to this case, that to remove a county seat from a point within five miles of the geographical center of a county to a point more than five miles therefrom, a majority of two-thirds of all the votes cast at the election is necessary, while it only takes a simple majority of the votes cast to remove the county seat from a point without to a point within a five-mile radius from the center. It is also so declared in section 2, article IX, of the Constitution. The mode of ascertaining the geographical center is provided for in article 813, which reads: "The Commissioner of the General Land Office, upon being notified by the county judge of any county that a proposition is submitted to the people of such county, or that it is desirable on the part of the people thereof that the center of such county should be designated preliminary to the removal of any county seat, shall, from the maps, surveys

and other data on file in his office, designate the center of such county, and shall certify the same to the county judge of such county, who shall cause the same to be spread upon the records of deeds of his county." This article of the statute is in accord with the express declaration of the section of the Constitution above cited, and the certificate of the Commissioner, therefore, would seem to exclude any other method of determining the geographical center; but we are not prepared to hold that a certificate duly made and given is rendered void by the mere fact that a like certificate had been given in previous years. Inasmuch as the designation is to be made "from the maps, surveys, and other data on file" in the Land Office and not by an actual survey, it would seem that the center must be determinable by reference to surveys and objects called for in field notes, and, as these are subject to mutations during the passing years, that it was intended by the law that, whenever called upon by the authority named in the statute, the Commissioner should make designation and certificate of the center so as to relieve any uncertainty that from any cause may have arisen.

The certificates under consideration are not exhibited in appellees' petition so that we may determine the precise difference between them, or how the several center points as therein stated may be fixed on the ground, but neither certificate is attacked for fraud or mistake on the part of the Commissioner, and it should therefore be presumed, we think, especially when not clearly denied, that since the designation and certificate first made there have been such changes in the maps, surveys, and data on file in the Land Office pertaining to Crosby County as authorized the general change of center point that the petition notes; otherwise, if accurately made, there would have been no material difference in the certificates. The law, as already indicated, is flexible, general in terms, and contemplates an adaptation to changed conditions. It nowhere limits the people of a county, or the power of the Commissioner, to a single original designation and certificate, nor does the law pronounce the consequence contended for in event more than one shall be made. If the acts of the county judge in making the request, and of the Commissioner in making the designation, were legal, then neither the interest nor the motive of the county judge can be material.

We conclude that on the merits appellees were not entitled to an injunction. The order therefor will, accordingly, be reversed and the writ of injunction abated.

*Reversed, and injunction dissolved.*

Writ of error refused to Ralls.