MARTIN et al. v. ABERNETHY, County
Judge, et al.†

(Court of Civil Appeals of Texas. April 5, 1911. Rehearing Denied May 3, 1911.)

1. COUNTIES (§ 35*)—REMOVAL OF COUNTY SEAT—ELECTIONS.
    The validity of an election for the removal of a county seat cannot be questioned on the ground that the petition for the election was not signed by a sufficient number of the freeholders and electors of the county.
    [Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 38–45; Dec. Dig. § 35.*]

2. COUNTIES (§ 34*) — COUNTY SEAT — REMOVAL—ELECTIONS—PETITION.
    A petition requesting the county judge to order the county commissioners to hold an election to submit to the electors of a county the question whether "it is desirable" to remove the county seat is sufficient to authorize the judge to order an election to determine the question of removal of the county seat.
    [Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 34–37; Dec. Dig. § 34.*]

3. COUNTIES (§ 26*)—COUNTY SEAT—REMOVAL—STATUTES.
    Rev. St. 1895, art. 812, as amended by Laws 1903, c. 93, prescribing the number of persons who must petition for an election for the election for the removal of a county seat, is not in conflict with Const. art. 9, § 2, providing for the removal of county seats and requiring a majority, or a two-thirds majority, at an election, to authorize a removal.
    [Ed. Note.—For other cases, see Counties Dec. Dig. § 26.*]

4. COUNTIES (§ 34*)—COUNTY SEAT — ELECTION—DESIGNATION AND CERTIFICATION OF GEOGRAPHICAL CENTER OF COUNTY.
    Where subsequent to the issuance by the Commissioner of the Land Office of a certificate designating the center of a county, whose boundaries had not been fixed by any statute, the boundaries were materially changed, affecting the location of the center of the county, the commissioner had authority to designate and certify a new center as a basis for an election for the removal of the county seat.
    [Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 34–37; Dec. Dig. § 34.*]

5. COUNTIES (§ 10*)—BOUNDARIES — CHANGE OF BOUNDARIES.
    Under Sayles' Ann. Civ. St. 1897, art. 799 et seq., relating to county lines, while boundaries of a county, fixed by statute, can only be changed by statute, when the position

of county lines are not certain, they may be changed in the method prescribed.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 7–9; Dec. Dig. § 10.*]

6. COUNTIES (§ 34*)—COUNTY SEAT — LOCATION—GEOGRAPHICAL CENTER OF COUNTY.

Where the method pursued by the Commissioner of the Land Office to locate the geographical center of a county as a basis for an election to remove the county seat was substantially correct, any question of mistake in fixing the center as certified to by him, as disclosed by the method pursued, was immaterial.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 34–37; Dec. Dig. § 34.*]

7. COUNTIES (§ 34*)— COUNTY SEAT — LOCATION—GEOGRAPHICAL CENTER OF COUNTY.

The question of determining the geographical center of a county as a basis for an election for the removal of the county seat is committed to the Commissioner of the Land Office, and his certificate is conclusive in the absence of fraud, or such gross mistake as implies fraud.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 34–37; Dec. Dig. § 34.*]

8. COUNTIES (§ 34*) — COUNTY SEAT — LOCATION—GEOGRAPHICAL CENTER OF COUNTY.

A certificate of the Commissioner of the Land Office fixing the geographical center of a county as a basis for an election for the removal of the county seat is not made invalid by his revoking it on the erroneous ground that he had no authority to issue it and desired to withdraw it.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 34–37; Dec. Dig. § 34.*]

Appeal from District Court, Atascosa County; E. A. Stevens, Judge.

Action by H. G. Martin and others against W. M. Abernethy, County Judge, and others. From a judgment against plaintiffs, they appeal. Affirmed.

N. A. Rector and Frank H. Burmeister, for appellants. Geo. M. Martin, J. A. Waltom, W. W. Walling, and C. C. Clamp, for appellees.

JAMES, C. J. The petition of H. G. Martin and others, brought in their own behalf and for other property owners in Atascosa county against Abernethy, as county judge of said county, and the several county commissioners as such, alleged in substance: That in September, 1893, the Commissioner of the General Land Office regularly issued his certificate designating the center of said county, which certificate with a map was made from the maps, surveys, and other data on file in the General Land Office, was correctly made, and was duly filed in the office of the county judge, and was shown on the official map made of the county in use in the General Land Office, showing the center of the county and the position of Pleasanton, the county seat to be within the radius of five miles from such center. That on or about April 15, 1910, upon the request of the county judge, the Commissioner of the General Land Office, through his chief clerk, Walker, issued another certificate showing the center of the county to be at another place than that fixed by the commissioner in 1893, and something over six miles from Pleasanton, which certificate the county judge caused to be recorded in the deed records of the county. That thereafter, on or about August 30, 1910, the commissioner revoked and set aside his certificate of April 15, 1910, and so notified the county judge. That said certificate was void because a former commissioner, having designated the center, issued his certificate thereof, which was duly delivered to the county judge, the center of the county was conclusively determined by him, and his act was binding on all subsequent commissioners, who had no power to issue another certificate relating to the center of the county. That there has been no change in the maps, plats, surveys, and other data in the General Land Office affecting the boundaries of the county fixed by statute since September, 1893. That the center of the county as established and certified by the former commissioner was correctly determined by him by the proper methods scientifically used for such purpose, and the methods employed by the commissioner in 1910 for the purpose were incorrect and the result incorrectly arrived at in placing the center at a different point from the center. That on August 31, 1910, the county judge, by virtue of a petition of the voters of Atascosa county, caused an order to be entered upon the minutes of the commissioners' court, ordering an election to be held in the voting precincts of the county on October 1, 1910, to determine whether or not it is desirable to remove the county seat from Pleasanton, and in pursuance of such order caused election notices to be posted, and an election was held in the county on October 1, 1910, at which election he caused to be printed tickets in the following form: "For removal to Jourdanton," "For remaining at Pleasanton," and at said election about 691 votes were cast for the removal to Jourdanton. That said election was void for the following reasons:

(1) The petition for the election failed to represent that an election was desired to remove the county seat from Pleasanton (where it had been for more than 50 years) to the town of Jourdanton, or to any other place, but applied for an order for the holding of an election, "for the purpose of submitting to the electors of said county the question as to whether or not it is desirable to remove the county seat of Atascosa county," and said petition was not signed by a majority of the qualified electors in said county entitled to vote at the proposed election, there being in the county about 1,500 qualified voters, and the names signed numbered about 600, of whom the county judge determined there were on said petition only 329 proper signers.

(2) Because the order of the county judge,

after reciting that the petition had been filed and stating that the question therein presented "as to whether or not it is desirable to remove the county seat of said county from Pleasanton, Texas," and reciting, "It is therefore ordered that an election be held on Saturday, the 1st day of October, in the various voting precincts of said Atascosa county to determine whether or not the county seat shall be removed from Pleasanton, Texas," shows that no election was ordered to determine whether or not the county seat should be removed from Pleasanton to Jourdanton, or to any other place, and on that order there could not be an election wherein the voters were authorized to determine whether or not the county seat should be removed from Pleasanton to Jourdanton; that said order was void for the further reason that it provided, "And on each ticket the voter shall write or cause to be written or printed 'for removal to ———' (inserting the name of the place); 'for remaining at ———' (inserting the name of the place)."

(3) Because there were no election notices posted notifying the electors that an election would be held to determine whether or not the county seat should be removed from Pleasanton to Jourdanton or to any other point, the posted notices stating that said election would be held "for the purpose of submitting to the electors of said election precinct the question as to whether or not it is desirable to remove the county seat of Atascosa county, Texas, from Pleasanton."

(4) Because the tickets prepared by the county judge to be used at said election read as follows: "For removal to Jourdanton" "For remaining at Pleasanton"—the petition not requesting and the order not directing such question as to removal to Jourdanton.

The prayer was for an injunction against the defendants, restraining them as officers from canvassing the returns of the election and declaring the result thereof, etc. Defendants answered by general demurrer and general and special denial. All demurrers were overruled, and the case heard by the judge who rendered judgment against plaintiffs, and dissolved the temporary injunction that had been granted, but specially restrained defendants, in so far as the removal of the county officers and the records to Jourdanton were concerned, pending an appeal.

Appellants' first assignment of error, stated as a proposition in itself, is that the trial court erred in holding that the petition presented to the county judge was sufficient basis for his action in ordering an election to determine the question of the removal of the county seat from Pleasanton where it had been for more than 40 years; said petition showing that it was merely a petition for an election upon the desirability of removing the county seat, and not a petition for an election to determine the removal of the county seat. The petition was as follows: "Your petitioners, resident freeholders and qualified voters of Atascosa county, Texas, petition your honor to make an order upon the minutes of the commissioners' court of Atascosa county for the holding of an election at the various voting precincts of said county on a day therein named which shall be not less than thirty nor more than sixty days from the date of said order for the purpose of submitting to the electors of said county the question as to whether or not it is desirable to remove the county seat of Atascosa county."

The second assignment is that said petition was insufficient to invoke the order of an election to determine the question of removal of the county seat, because, Pleasanton having been the county seat for over 40 years, the statute required the petition to be signed by a majority of the resident freeholders and electors of said county, which was not done, the qualified electors being about 1,400 and said petition was signed by only 631 signers, and the court erred in holding that said petition was signed by the requisite number of qualified electors.

Under the fourth assignment the contention made is embodied in the following proposition: "The petition * * * requested a vote to determine 'whether or not it is desirable to remove the county seat,' etc., and an order made thereon was that an election should be held to determine whether or not said county seat should in fact be removed from Pleasanton." The petition in the form presented did not warrant the court in making the order for an election to determine whether or not the county seat should be removed.

The points raised by the foregoing assignments are:

(1) That the petition for an election to determine whether or not it was desirable to remove the county seat of the county was of itself insufficient as a basis for the ordering of an election to determine the removal of the county seat from Pleasanton.

(2) That the petition was otherwise insufficient because not signed by a majority of the freeholders and electors of the county being signed by 631, and plaintiffs' petition showing that there were about 1,500.

[1] The second of these propositions is disposed of adversely to appellants by what is said in the case of Scarbrough v. Eubank, 93 Tex. 106, 53 S. W. 573.

[2] The first we overrule, as we think it was sufficient to call into exercise the power of the county judge to order an election to determine the question of removal of the county seat. The petition asked for an election, and the only election authorized by law in the premises was an election to determine the question of removal of the county seat. An expression of the qualified voters as to the desirability of removing the county seat would mean nothing more or less than an expression in favor of the removal.

[3] The third assignment of error is sub-

mitted as a proposition, and is as follows: "Article 9, § 2, of the Constitution of the state of Texas, provides for the removal of the county seat of counties, and grants the right of voting upon such question to the qualified electors of said counties, requiring a majority, or a two-thirds majority, as the case may be, under certain conditions, and directs the Legislature to pass laws regulating the manner of removing county seats. Article 812, Revised Statutes 1895, and the amendment to 1903, p. 118, limits the number of petitioners' to qualified electors and freeholders, and restricts the said provision of the Constitution relating to said subject-matter; and for that reason the statute is unconstitutional, and the court erred in not so holding, and in holding that only a majority of the freeholders and qualified electors were required to sign said petition." There is no conflict between the article of the Constitution and the statute of 1903, as alleged. The constitutional provision relates to the matter of voting on the question of removal to which matter the statutory provision does not refer at all. The statute deals only with the application for such an election.

[4] Under the fifth, sixth, and ninth assignments of error, appellants advance the proposition that because W. L. McGaughey, then Commissioner of the General Land Office, on September 14, 1893, at the request of the county judge of Atascosa county, in view of an agitated removal of the county seat, designated and certified the geographical center of the county to the county judge, this for all time determined such center, and, further, the proof showing that the county boundary lines had never been legally changed; that is to say, by any act of the Legislature the commissioner was without authority to make another and different designation thereof as he attempted to do on April 15, 1910. It appears from the testimony that the county as mapped and recognized in the General Land Office at the time the recent certification was made showed material change in the exterior boundary lines of the county from what was recognized as the lines in 1893, such changes being the pushing of the north line southward about 1,300 varas, the east line west about 1,000 varas, and the west line west about 1,340 varas; the south line remaining substantially the same. Such changes or any of them would, of course, effect a change in the position of the geographical center of the county from what it was in 1893, assuming that the designation in 1893 was correct. Mr. Burmeister, witness for appellants, testified: "I admit that if the boundaries had been changed by 1,300 varas, that everything else being equal, it would shift the point where the center should be by half the distance of the change, in this case 650 varas." These changes in the map of the county in use in the land office between the map in use of

1893 and the map of 1910 made it appropriate, in view of an election in 1910 to remove the county seat, for the commissioner to designate and certify the then geographical center of the county. Parrish v. Ralls, 133 S. W. 933.

[5] The proposition that no changes in the recognized county lines can occur without an act of the Legislature changing the lines is erroneous, as will be seen by reference to Sayles' Rev. St. art. 799 et seq. It is true that the lines as fixed by statute cannot be changed except by statute, but, when the position of county lines are not certain, methods are provided for making them certain. It was shown, among other things, that in 1895 the line between Bexar and Atascosa county was adjusted and determined between the two counties in conformity with the said articles, changing its position by 1,300 varas. The above sufficiently disposes of the said assignments.

Under the seventh, eighth, tenth, eleventh, and thirteenth assignments are presented substantially the following propositions, without our undertaking to copy them: It is contended that the proof showing without dispute that the point designated as the geographical center by the commissioner's certificate of April 15, 1910, was not in fact such center of the county, and the method employed by the commissioner in ascertaining and designating such center being shown to be an incorrect method, his certificate was not conclusive, and proof of a mistake, so arising, could be shown in impeachment of it. The method pursued by the commissioner was to bisect the county as constituted by the outer boundaries upon the said Land Office map, which embodied a compilation of all the data in that office on the subject, by a north and south line dividing the area of the county into east and west halves, and by an east and west line dividing the area into north and south halves, and adopting the point of intersection. Appellant contends that the accurate way of determining the center is by what is known as the "gravity system," which is by cutting a cardboard the figure of the county, suspending the same by a pin at any extremity thereof, so that it may swing freely and suspending from that point a plumb line, and repeating this from any other point of extremity, and the point of intersection, which would be the same point in every instance, would constitute the true center of the figure. The result of the two methods is not the same. Hunnicut, chief draughtsman of the General Land Office, who did the work of establishing the geographical center in question, testified: "The center of Atascosa county designated by the acting commissioner on April 15, 1910, does not represent or conform with the center ascertained by the gravity system. The center of gravity of the figure represented by the boundary lines of the county of Atascosa as ascertained by me is

situated on the map of said county according to measurement by scale 2,250 varas N. 32¼° E. from the center designated upon the map by the certificate issued April 15, 1910." Mr. Burmeister, speaking of the center defined in the certificate of April 15, 1910, testified: "I have also measured the distance from that center to the town of Pleasanton and by measurement find that it is 6½ miles."

[6] From the testimony of these two witnesses it would clearly appear that according to either center the one arrived at by the gravity system, or by the method used by Hunnicut, Pleasanton was without the five mile radius. This testimony would sustain the judgment, and render immaterial any question of mistake on the part of the General Land Office in fixing the center where he certified it to be. It appears from the decree that the judge found, and based his judgment, among other things, on the finding: "That the certificate of the Commissioner of the General Land Office issued on the 15th day of April, 1910, designating the geographical center of Atascosa county, Tex., * * * was made by said commissioner in the manner provided by law, and then was and now is a legal and binding certificate, * * * and that said certificate is the only legal certificate under which said election could be held, designating the geographical center of said county, and that, therefore, said geographical center of said county is as fixed by said certificate dated April 15, 1910, and that the town of Pleasanton is about 6½ miles distant from said geographical center, and that the town of Jourdanton is only about 3 miles distant from said geographical center," etc. The testimony showed that the certificate was made by the commissioner from the maps, surveys, and other data on file in his office, as the law required him to proceed in determining the geographical center of counties. There was testimony showing the method adopted in determining the center was a proper and admissible method of getting at the geographical center. In so far as this was a question of fact, it seems settled by the judge's conclusion.

However, there is an intimation in appellants' brief that the judge considered the commissioner's certificate as conclusive. The Court of Civil Appeals, in the case of Kilgore v. Jackson, 118 S. W. 822, expressed this view. Certainly it was intended to lodge the exclusive power to determine such fact with the Commissioner of the General Land Office, he being enjoined in the performance of that duty to ascertain the fact "from the maps, surveys, and other data in his office." A center arrived at through such process would naturally admit of mistake. The process required to be observed in determining such center of a county does not admit of or contemplate absolute precision in the result in all instances. The result expected is the position of the geographical center as found by the commissioner from the maps, surveys, and data in his office according to the best of his skill, judgment, and ability, and, when this is done and the result certified, his act should be taken as conclusive, unless in a case where fraud on his part is charged, or such gross mistake as would imply fraud. The petition contains no such averment, and, if the trial judge held immaterial testimony tending to show error on the part of the commissioner in locating the center where he did, we think he held correctly.

[7] The question of determining the position of the geographical center as a basis for such an election was committed to the Commissioner of the General Land office. It was intended that his certificate should conclude the question. It was never intended that for a mere mistake in the result of his work, not inconsistent with the honest exercise of his judgment and skill, the result arrived at by him should be inconclusive, and subject to be drawn into question by the conflicting testimony of surveyors and theorists, which would place all such elections in hopeless uncertainty.

The said assignments are overruled.

[8] The twelfth assignment of error advances the proposition: "If the commissioner had authority on April 15, 1910, to designate the center of Atascosa county, he certainly had the authority to revoke the certificate after it had been issued which he did, and which revocation was received by the county judge before ordering the election, and when said election was held the only certificate of the designation of the center of said county was that made by W. L. McGaughey, commissioner, on September 14, 1893." The letter relied on is as follows: "General Land Office, State of Texas. August 30, 1910. Mr. W. M. Abernethy, Pleasanton, Texas. Dear Sir: With reference to the designation of the geographical center of a county, and especially your county, I have concluded that this department transcended its authority and power in issuing a certificate on the 15th of April, present year, certifying where the geographical center of your county is located. This conclusion is based upon the decision in the case of Kilgore et al. v. Jackson et al., reported in 118 S. W. 819. I find in this case the court held a certificate by this department, certifying where may be found the geographical center of a county is conclusive. If that certificate is conclusive, then such finding and certificate issued by an administration of this department I think is conclusive upon succeeding administrations of this department, unless fraud or manifest error can be shown in the original designation of the geographical center. Taking this view of the matter I think this department should not have issued this last certificate in this matter; therefore, as far as can be done, I wish to withdraw that,

other certificate, because it seems from the records of this office that this department, several years ago, determined where is the geographical center of your county and sent a sketch out to that effect and map of this department shows that the center has heretofore been determined and located on such map. If you want a certificate showing where that center is delineated on the map, that will be sent you upon your request. Yours truly, J. T. Robison, Commissioner." Granting that the commissioner might, for mistake in his work recognized by him, have power to revoke a certificate that had been duly issued and recorded, and issue another that would take its place, the above letter was clearly not an act of that kind. He conceived that, because a predecessor had issued a certificate fixing the center in 1893, he had transcended his authority in issuing this one, and therefore desired to withdraw it. His reason was unsound, and what he did had no effect on the validity of his certificate.

This disposes of all the assignments of error, and we conclude that the judgment should be affirmed.