## STATE ex rel. WILKE et al. v. STEIN et al. (No. 8217.)

Court of Civil Appeals of Texas. San Antonio. April 24, 1929.

Rehearing Denied May 29, 1929.

Morriss & Morriss, of San Antonio, Lee Wallace, of Kerrville, and Walter Petsch, of Fredericksburg, for appellants.

H. H. Sagebiel and J. B. Wieser, both of Fredericksburg, for appellees.

FLY, C. J. This is a suit in the nature of a quo warranto instituted in the name of the state of Texas, through the county attorney of Gillespie county, and upon the relation of Ernst Wilke and 38 other property holders in Fredericksburg, against Joe Stein, Arthur Kuenemann, and Alfred Schmidt, the first named holding the office of mayor and the other two the office of commissioners of the city of Fredericksburg, the validity of whose incorporation is attacked by the suit. A general demurrer was sustained to the petition and the propriety of that action of the trial court is the issue now before this court.

For the purpose of testing the sufficiency

of the petition, every fact alleged therein must be assumed to be true, and a summary of those facts becomes necessary. According to the allegations, on March 30, 1928, a petition was presented to the county judge of Gillespie county, signed by 137 resident voters of the proposed city of Fredericksburg, praying that an election be held to determine whether "a portion of the town or city of Fredericksburg should be incorporated for municipal purposes under a commission form of government," and setting forth by metes and bounds the area desired to be placed in the contemplated city. The county judge ordered an election for May 10, 1928, on the incorporation of the city, the ·commission form of government, and the election of mayor and commissioners. The election was held and resulted in 851 votes being cast, of which a majority were for incorporation and a commission form of government. There was a majority of the 851 votes cast of 157 for incorporation, and the officers herein named had been elected mayor and commissioners. It was further alleged that the officers were preparing to levy taxes on the assessed value of property of $1,200,000, the taxes to be collected amounting to $18,000; that the relators own within the limits of the corporation taxable property of the value of $124,000, to which a charter had been granted.

It was alleged: That the incorporation was void because "the town or city of Fredericksburg is an old established town, county seat of Gillespie County, with a population of, to-wit: about 2,760 persons resident therein, and at the time of said pretended ·election there were residing about said number of persons within the established boundaries of said town, and about to-wit: 1,250 qualified electors, qualified to vote in an election for the purpose of determining whether said town or city should be incorporated under the law, within the established boundaries of said town. That a majority of the qualified electors within the proper and actual boundaries of said town or city are and' at all times, and being at the time of the pretended election, aforesaid, were and yet are, opposed to the incorporation of said town or city, and opposed to the incidental levy and assessment of taxes for city purposes incident to said incorporation. That on sundry occasions elections had been called and held within said town or city to determine whether incorporation as a municipality should be had, in each instance resulting adversely to the proponents of incorporation, which facts, and the fact that a majority of the qualified electors were opposed to incorporation were well known to defendants, and to the proponents of the incorporation in question, and to the signers of the petition to the County Judge, aforesaid, at the time of presentation of said petition, and at all times

prior and subsequent thereto. That so knowing, and in order to thwart the will of the majority of the electors of said town or city, defendants and the proponents of said election and incorporation conceived and acted on the fraudulent purpose of eliminating large portions of the built up and established territory of and in said town or city and the population and qualified electors within the portions so eliminated; to do which, defendants, and those proposing the incorporation in question, prescribed the boundaries of the area to be incorporated as hereinabove set out."

It was further alleged that in fixing the boundaries about 111 city blocks, wherein reside about 1,080 persons, including about 426 electors, were excluded; that 234 of those electors would have voted against incorporation and only 36 in favor of incorporation, and that if the excluded votes had been cast there would have been a majority against incorporation.

Attached to the petition and made a part thereof is a map or plat of the whole settlement or unincorporated town, with lines marking the boundaries of the portion incorporated, and other lines marking the boundaries of the unincorporated portion. Within the boundaries of the incorporated town are included the public schoolhouses, the courthouse, the fair grounds, and all the principal streets, among the number being the street on which the courthouse, railroad depot, and public square are situated. The map clearly indicates that the heavily inhabited portion of the settlement, as well as all the municipal agencies, are included within the limits which were incorporated. More than 20 of the blocks outside of the red lines, indicating the incorporation, and included within the green lines of the complaining portion, have not been divided into lots. The green lines exclude a number of blocks divided into lots and presumably populated, especially on the west and southwest portions. Most of the boundary lines of the incorporated part are run with reference to boundaries of the blocks. The lots in the blocks within the incorporated portion appear generally to be larger than those on the outside, and clearly indicate that they constitute the original town of Fredericksburg.

The whole tenor of the petition leads to the conclusion that the complainants residing outside the corporation are opposed to being incorporated therein, and their grievance seems to be that they were not included in the boundaries of a corporation, the incorporation of which they desired to prevent. As to the number of the people excluded from the corporation, it is evident that appellants could have no exact knowledge and were indulging in a guess, conclusion, or surmise as to their number, and as to the number of voters, and how they would have vot-

ed had the opportunity been given. It is alleged that 234 of the voters would have voted against incorporation. The census of 1920 gives Fredericksburg 2,900 inhabitants and that is the only official statement as to the number of the inhabitants. There is no allegation that the law as to the incorporation of towns and cities was not followed; the only complaint being that the boundaries defined by the petition did not include within their limits all the land and all the people who lived in or near the undefined boundaries of the unincorporated town, community, or settlement.

There is no statute prohibiting the incorporation of a part of a settlement or unincorporated town, and where a large majority, admittedly two-thirds, of such settlement or town asks for and obtains a charter from the state, there is no precedent in law or morals that would condemn such incorporation. The map, far from indicating what appellants denominate a "gerrymander," shows a compact area with fewer angles and broken lines than the area which appellants contend should have been the boundaries of the town. Appellants are not complaining because they are not within the limits of the bounds of the town, but the complaint is that they were not allowed to defeat the incorporation and prevent the large majority of the inhabitants from enjoying the benefits arising from a modern sewer system, a properly governed electric light and gas plant, a municipal water plant, a properly organized police force, and fire department of an up-to-date city. They allege that the taxable property within the corporate bounds is of the value of $1,200,-000 and that they own $124,000 worth of that property. Their financial interest is small as compared with the total value of the property, but if they owned one-half of it, there would be no cause for destroying the corporation. If such a principle were established, no municipal corporation would be safe, because most of them in Texas have vast interests owned by persons not citizens of the corporation, nor even of the state. Appellants did not desire to become a part of the corporation, but seek to destroy it. They are doing business within the corporate limits, and while obtaining some of the advantages of the corporation, without living in it and paying taxes on their homes, complain that they, comprising as they claim, over 1,000 people, will be compelled to pay $936 per annum, or less than $1 per capita.

Fraud is charged generally against the incorporators of the town, but the allegations fail to show how appellants have been defrauded. Appellees merely surveyed the boundaries of land held by two-thirds of the population and voters, which had all the public buildings and nearly nine-tenths of the wealth, and left those outside the corporation who did not desire its benefits and had been attacking and defeating it for years. No fraud on any one appears from the pleadings to have been practiced by any one. We have found no decision rendered in or out of Texas which could be construed to condemn the acts of appellees in choosing the boundaries of their town. We have not been referred to any statute or decision which denies to citizens living in an unorganized community the right to determine what shall be the size and shape of any portion of the area occupied by the community desired to be incorporated.

The cases cited by appellants do not apply to the facts alleged in the petition, but have reference to the inclusion of area within corporate limits, which should not be included, and not to the exclusion of land or people therefrom. No right of person or property is shown to have been invaded by an exclusion of the territory of which complaint is made from the boundaries. By no process of reasoning can injury to the appellants be arrived at. The only additional burden which is placed upon the owners of a comparatively small amount of property within the corporate limits is a tax of less than $1 per capita, which is a burden of which no owner of property within a city can complain no matter where he may reside.

As said in Dillon, Municipal Corporations, § 352: "Since the leading object of an American corporation is to invest the inhabitants of a defined locality or place with a corporate existence, chiefly for the purposes of a local government, it is obvious that the geographical limits or boundaries of the corporation ought to be defined and certain. These boundaries are usually described in the charter or constituent act, or a method is prescribed therein, by which they may be ascertained and settled. Because residence within the corporation confers rights and imposes duties upon the residents, and the local jurisdiction of the incorporated place is, in most cases, confined to the limits of the corporation, it is necessary that these limits be definitely fixed. They are established by legislative authority. The power to incorporate a place necessarily includes the power to fix its boundaries."

The Legislature of Texas has not attempted to give the minimum area of a town seeking incorporation, but has left that to the wishes and desires of the incorporators. The Legislature has confided to the people of a certain district, whose maximum limits are fixed by law, to fix the boundaries of the desired corporation, and no one not included within such limits has any cause of complaint. If those who live contiguous to an incorporated town or city have cause of complaint in a very thickly settled community, it would be almost impossible to secure a

charter for the town or city, which could not be assailed because all the neighboring inhabitants were not allowed to vote on the question of incorporation.

There is nothing in the definitions of towns given in State v. Eidson, 76 Tex. 305, 13 S. W. 263, 7 L. R. A. 733, and Ralls v. Parrish, 105 Tex. 253, 147 S. W. 564, which militate against the right of the central and older part of an unincorporated town to incorporate for municipal purposes. The real gist of those decisions was that the collection of houses and inhabitants at the time constituted the unincorporated town, no matter whether it was platted or not, when it was designated as a county site or for school purposes. Of course, the aggregation of inhabited houses which would constitute an unincorporated town would be that existing when the town was designated for certain purposes, and not the acreage added outside its limits by additions or otherwise. There is no allegation as to the boundaries of the old town of Fredericksburg, although the map tends to show that the original unincorporated town was included in the corporate limits. As stated in Ralls v. Parrish, the intention of the voters at the time of selecting the county seat must control its boundaries, and not its accretions long after that time. The status of Fredericksburg as an unincorporated town was fixed when Gillespie county was named and constituted in honor of "Captain Robert A. Gillespie at the battle of Monterey," with Fredericksburg as its county seat. The law creating the county and the county site was enacted on February 23, 1848 (Laws 1848, c. 47) and the boundaries as then designated by the inhabited houses constituted the town of Fredericksburg. There is no allegation that the town was spread over any portion of the district in which appellants now live, but, on the other hand, the map shows that every part of the old town is within the corporate limits of the chartered municipality. Gammels Laws of Texas 3, p. 35. An incorporated town cannot by accretion extend its limits, and it may follow that an unincorporated town cannot extend its limits as fixed by its recognition as such town. State v. Eidson, herein cited.

We conclude that appellants were not in any manner defrauded of anything by the incorporation of Fredericksburg; that all of the old town of Fredericksburg was embraced within the boundaries of the incorporated city; that appellants had no rights entitling them to be included in the corporate limits; that the allegations of the petition fail to show any right entitling appellants to a writ of quo warranto; and that it was open to a general demurrer.

The judgment is affirmed.