**STATE ex rel. WILKE et al. v. STEIN et al.**
**No. 1155—5486.**

Commission of Appeals of Texas, Section B.
March 26, 1930.

Walter Petsch and Lee Wallace, both of Kerrville, and Morriss & Morriss, of San Antonio, for plaintiffs in error.

J. B. Wieser and H. H. Sagebiel, both of Fredericksburg, for defendants in error.

SHORT, P. J.

This suit is by information in the nature of a quo warranto, seeking to have adjudged to be invalid the proceedings by which the town of Fredericksburg in Gillespie county apparently became a municipal corporation.

The relators are 39 citizens of Gillespie county, who claim to have been qualified voters and *inhabitants* of the territory comprising the unincorporated town of Fredericksburg, at the time these proceedings were had, and who assert that those who instituted and carried forward to completion the proceedings unlawfully and fraudulently de-

prived them of any opportunity to have a voice in deciding the issue presented in the election held to determine whether the town of Fredericksburg should be incorporated.

The respondent Joe Stein, is alleged to be the de facto mayor of the corporation, alleged to be invalid, and the other two respondents to be commissioners, all acting by virtue of the result of the aforesaid proceedings, whereby said respondents were respectively elected to the respective positions named. These proceedings were instituted and prosecuted partly by virtue of article 1155 of the R. S., which authorizes any unincorporated city or town in the state, having a population of over 500 and less than 5,000 *inhabitants*, which desired to be incorporated under the commission form of government, to have called by the county judge an election to determine whether such incorporation may be had, if satisfactory proof is made that the city or town contains the requisite number of *inhabitants*.

On March 30, 1928, a petition signed by 137 alleged resident electors of the proposed town of Fredericksburg was presented to the county judge of Gillespie county, asking that an election be ordered to determine whether a certain designated territory should be incorporated for municipal purposes under a commission form of government. On the 2d day of April, 1928, the election was ordered to be held on the 10th day of May 1928, and in accordance with said order an election was held, which resulted in favor of incorporating said designated territory, said result being duly declared, and further declaring in favor of the respondents, their election to their respective positions, by virtue of which the respondents assumed to exercise the duties devolving upon a governing body for the *inhabitants* of said designated territory.

The petition of the relators alleges that the proceedings resulting in favor of the incorporation of said designated territory and the election of said respondents to their respective offices were illegal and void by reason of various and sundry alleged reasons, among which are stated the following:

"That the town or city of Fredericksburg is an old established town, county seat of Gillespie County, with a population of, to-wit: about 2760 persons resident therein and at the time of said pretended election there were residing about said number of persons within the established boundaries of said town, and about to-wit: 1250 qualified electors, qualified to vote in an election for the purpose of determining whether said town or city should be incorporated under the law within the said established boundaries of said town. That a majority of the qualified electors within the proper and actual boundaries of said town or city are at all times,

and being at the time of the pretended election, aforesaid, were and yet are, opposed to the incorporation of said town or city, and opposed to the incidental levy and assessment of taxes for city purposes incident to said incorporation. That on sundry occasions elections have been called and held within said town or city to determine whether incorporation as a municipality should be had, in each instance resulting adversely to the proponents of incorporation, which facts, and the fact that a majority of the qualified electors were opposed to incorporation were well known to defendants, and to the proponents of the incorporation in question, and to the signers of the petition to the county judge, aforesaid, at the time of presentation of said petition, and at all times prior and subsequent thereto. That so knowing, and in order to thwart the will of the majority of the electors of said town or city, defendants and the proponents of said election and incorporation conceived and acted on the fraudulent purpose of eliminating large portions of the built up and established territory of and in said town or city and the population and qualified voters, within the portion so eliminated; to do which, defendants, and those proposing the incorporation in question, prescribed the boundaries of the area to be incorporated as hereinabove set out. That in so fixing and prescribing the boundaries, aforesaid, there was wrongfully and fraudulently eliminated, within the actual boundaries, of and constituting part of said town or city, and within the platted, subdivided and thickly populated and built up portions thereof, about to-wit: 111 city blocks wherein reside about, to wit: 1080 persons, including, to-wit: about 426 electors, the proposed for incorporation excluding said area and said population, and said electors and the proposed city boundaries being gerrymandered with the illegal, arbitrary, unreasonable and fraudulent purpose and effect to cause favorable vote for incorporation within said boundaries."

The respondents interposed to the petition a general demurrer, which the trial court sustained, and, the case having reached the Court of Civil Appeals at San Antonio in due course, upon a hearing that court affirmed the judgment of the district court [18 S.W. (2d) 204], and writ of error was granted by the Supreme Court, based upon several assignments, the substance of each and all of which is that error was committed by the Court of Civil Appeals in affirming the judgment of the district court in sustaining the general demurrer to the petition.

The statutes of Texas permit the incorporation of cities, towns, and villages by the voluntary acts of the inhabitants thereof. These acts must substantially comply with the provisions of the particular statutes applicable to the particular facts of a given situation.

Title 28, cc. 1 to 20, articles 961 to 1269, inclusive.

The right to enjoy and exercise the privilege of a municipal corporation depends upon a substantial compliance with the mandatory provisions of the statutes which authorize its organizations, and the territory sought to be embraced must be so conditioned that it may be subjected to municipal government. Articles 1133, 1134; State v. Hoard, 94 Tex. 527, 62 S. W. 1054.

In its ordinary signification, by the word "town" is meant "an aggregation of inhabitants and a collection of occupied dwellings and other buildings," says McQuillen, a recognized authority on the law of municipal corporations, volume 1, paragraph 130, page 382. This authority further says, in speaking of the word "town": "The word carries with it the idea of a considerable number of people living in close proximity, as distinguished from a rural settlement. A town may, of course, exist without being incorporated, since its incorporation adds nothing to this distinct characteristic." State v. Eidson, 76 Tex. 302, 13 S. W. 263, 7 L. R. A. 733; Williams v. Willis, 84 Tex. 398, 19 S. W. 683; Ralls v. Parrish, 105 Tex. 253, 147 S. W. 564; State v. Baird, 79 Tex. 64, 15 S. W. 98.

In a popular sense, the word "town" means a collection of *inhabited* houses with their appurtenances larger than a village, which in the same sense is a collection of *inhabited* houses with their appurtenances larger than a hamlet, the controlling idea being that the essential element of both a town and village is human habitation.

In speaking of the condition once existing therein, Goldsmith in the "Deserted Village" conveys the same idea by the use of the words:

"These *were* their charms, sweet village!
sports like these,
With sweet succession taught,
e'en toil to please."

The following historical facts are thus stated in Wortham's History of Texas, published in 1924: "Fredericksburg, the county seat of Gillespie County, is located about 65 miles west of Austin. It was founded on May 8, 1846, by a small group under John Meusbach and named after Frederick the Great of Prussia. The town has never been incorporated. The majority of the inhabitants of Fredericksburg are German speaking people, descendants of the original settlers."

While the words "cities," "towns," and "villages" are often used interchangeably in the statutes of Texas, yet we find that each and all of these statutes refer to one essential element of their composition, which is the inhabitants necessary to exist in order to constitute one or the other. Article 11, § 5, of the

Constitution, provides that cities of certain population may adopt or amend their charter. Article 1165 of the Revised Statutes authorizes cities having more than 5,000 *inhabitants*, by a majority vote of the qualified voters, to adopt or amend their charter. Article 961 permits an incorporated city, town, or village, containing 600 *inhabitants* or over, to accept the provisions, in a certain way, of title 28, supra. Article 962 provides that all the *inhabitants* of each city, town, or village, so accepting the provisions of this title, shall continue to be a body corporate. Article 965 provides that additional territory may be added to that of the original, whenever the majority of the qualified electors of said territory shall indicate a desire to be included within the limits of said corporation. Article 966 provides that any city or town containing 600 *inhabitants*, or over, may be incorporated as such under certain rules and regulations. Article 1133 provides that, when a town or village contains more than 400 and less than 10,000 *inhabitants*, it may be incorporated as a town or village in the manner prescribed in chapter 11, title 28, and it appears from the allegations in the petition in this case that the town or village of Fredericksburg contained more than 400 and less than 10,000 *inhabitants*, and it was by virtue of this article, as well as by virtue of article 1155, that the *inhabitants* of this unincorporated town or village, at the time the proceedings above mentioned were instituted, were authorized to act in their effort to create out of the town or village, a municipal corporation. Every statute in the state which mentions the essential characteristics of a town or village, such as that of Fredericksburg, incorporates, as one of them, the number of *inhabitants* thereof, thus indicating that it was the intention of the Legislature in authorizing the incorporation of villages, towns, and cities to require as one of the essentials the existence of one continuous and contiguous territory, within which are living a certain number of inhabitants.

In Ewing v. State, 81 Tex. 172, 16 S. W. 872, 873, in speaking of the statutes, substantially the same as the present, by virtue of which the respondents claimed to be officers of the municipal corporation of Fredericksburg, Justice Gaines says: "Who are empowered to create the corporations? The *inhabitants* (italics ours) of cities, towns, and villages." In State v. Eidson, 76 Tex. 302, 13 S. W. 263, 264, 7 L. R. A. 733, the same learned judge, in discussing a similar question, says: "No definition of the word 'town' is given, and it follows that we must take the word on its ordinary signification,—a collection of *inhabited* houses. [Italics ours.] The term carries with it the idea of a considerable aggregation of people living in close proximity." In Ralls v. Parrish, 105 Tex. 253, 147 S. W. 564, 566, the Supreme Court, speaking through Justice Dibrell on this subject, says: "A plat and map of a town unincorporated is ineffectual on the one hand to extend the boundaries of such town beyond its habitation as evidenced by the collection of *inhabited* houses, and on the other hand to prescribe the limits of such town within the space of such plat and map where the collection of *inhabited* houses extend beyond the limits of such plat and map. This being true, it is proper to say that the situs of an unincorporated town will not be controlled by the platted area of such town without reference to the collection of *inhabited* houses, which together with the area appurtenant to same in the ordinary signification of the meaning of the word constitute the town." (Italics ours.)

In construing a similar statute, the Court of Civil Appeals in State v. City of Polytechnic, 194 S. W. 1136, in which the Supreme Court refused a writ of error, the word "town" is given its ordinary meaning—a collection of *inhabited* houses.

■ The map attached to the petition, made a part of it by express allegation, is only helpful in determining the sufficiency thereof to state a cause of action, when tested by a general demurrer to the extent of ascertaining the outlines of the territory alleged to have been wrongfully excluded, with relation to the outlines of that alleged to have been actually included, within the proposed corporation limits, for the reason that it does not attempt to show any *inhabited* houses located within the excluded area by the said outlines. However, the petition itself does allege these areas to be densely populated and such *inhabited* houses to be numerous.

■ Assuming, as we must, that the petition states the facts, when the map is considered in connection with the allegations of the petition, we find the fact is alleged that a very considerable portion of the unincorporated town of Fredericksburg, as it actually existed at the time the petition for election was filed, and, when the election was ordered, was not included within the limits of the territory sought to be incorporated, resulting in the exclusion of a large per cent. of its *inhabitants* from any voice in deciding the question submitted to the qualified voters inhabiting the town. According to the allegations of the petition, the qualified voters, among these excluded *inhabitants*, were thus disfranchised without due process of law, and illegally denied the lawful right to participate in said election in violation of the provisions of the law, by virtue alone of which such an election could be held.

The petition, in addition to the allegations we have discussed, allege that the unincorporated town of Fredericksburg, at the time these proceedings were had, had a population of about 2,760 persons, of whom 1,250 were qualified electors, but that the promoters of

the project to incorporate the town purposely excluded from participation in the election about 426 electors, representing with themselves 1,080 persons, all of whom were inhabitants of the said town of Fredericksburg, with the fraudulent design to defeat the will of a majority of the electors inhabiting said town, and that this exclusion accomplished this design.

While it is a familiar principle of the law that any fraud which materially affects the result of any transaction vitiates it, these particular allegations in this case add nothing to the cause of action alleged, since the intentions, fair or foul, of the promoters, could not affect the law by virtue of which they were authorized to act. If every material provision of the law was substantially followed in seeking a purpose which the law declares to be a legitimate one, it logically results that no lawful right of any one could be invaded, and no just reason could exist for complaint. If, however, any material provision of the law was not substantially followed, then the proceeding would necessarily be legally ineffectual to accomplish the purpose sought, without regard to the character of the intentions which may have actuated those seeking to accomplish this purpose.

If the qualified voters among the *inhabitants* of the town of Fredericksburg as it actually existed on the day the petition for the election was filed, on account of the failure of the proceeding based upon such petition to show a substantial compliance with every material provision of the law, which authorized such proceeding, were in fact excluded, to the extent alleged in the petition, from participation in determining the question which was involved in the election, then upon proof of the fact, in connecton with other material facts alleged in the petition, the trial court would be compelled to enter its judgment, giving the relators the relief asked for by the plaintiff in error.

In Hunt v. Atkinson, 12 S.W.(2d) 142, 145, this section of the commission, speaking through Judge Speer, in discussing the legal effect of an attempt to incorporate a given territory without complying with the law on this subject, said: "A proceeding indisputably not by way of attempt to comply with an existing law cannot by any stretch of construction be held to be had under 'color' of law. Such a proceeding is political self-determination and not colorable compliance with superior law." It is true in that case that the attempt to incorporate was not authorized by any law, while the attempt here was authorized and the result of the attempt is apparently valid, subject, however, to be annulled by a proceeding such as the present one is, upon due proof that the law, by virtue of which the promoters attempted to act, were not followed, at least in a substantial manner, but

the principle of law in the two situations is the same.

Taking the allegations in the petition to be true, as we must in passing upon its legal sufficiency, as against a general demurrer, it reasonably appears that the proponents, in their attempt to incorporate the territory into a municipal corporation, actually included only a part of the town of Fredericksburg. One of the vital complaints made by the allegations of the petition, proof of which is essential to justify the trial court to enter the judgment sought, is that those represented by the relators were *inhabitants* and qualified voters of the unincorporated town of Fredericksburg at the time the petition for the election was filed, and that they continued to be such *inhabitants* and qualified voters during the prosecution of the purpose sought by the voters, and that, by the provisions of the petition, only a portion of said *inhabitants* of said unincorporated town, who were qualified voters, were entitled to participate in said election, the remaining portion having been excluded by the terms of the petition and the order made in pursuance thereof, contrary to the statutes by virtue of which the proceedings were ordered, in consequence of which the respondents were illegally elected, and their acts as officers are and would continue to be void.

In Board of Superintendents of Norfolk County v. Duke, 113 Va. 94, 73 S. E. 456, 459, the Supreme Court of Virginia, in discussing a similar situation arising under an act of the Legislature similar to the provisions of our statutes, said: "As the act requires that the town incorporated shall contain not less than 200 *inhabitants*, it is conceivable that such a community might be almost indefinitely subdivided and erected into municipal corporations, if a faction in one of the subdivisions chanced to obtain control. We do not believe that the act contemplates anything of the kind; and when it provides for the incorporation of a thickly settled community, it does not mean that that community shall be subdivided in accordance with the caprice and whim of a limited portion of the people constituting the entire community. Great and unnecessary burdens might be imposed, and great wrong and injury accomplished, under such a construction."

The statutes on this subject, as embraced in title 28, which is all the law applicable to this case, would not authorize the creation of a municipal corporation out of a portion of territory comprising an unincorporated town, but, on the contrary, the statute contemplates that, when a municipal corporation is sought to be created, under the circumstances alleged in the petition, the entire town, that is to say, substantially all the citizens residing within the limits of the *inhabited* portion of the settlement, or com-

munity, must be included. According to the allegations of the petition, this was not done. If these allegations, together with other material ones, be established by the trial, the plaintiff in error will be entitled to have its petition granted. The assignments of the plaintiff in error relating to the points we have discussed should have been sustained by the Court of Civil Appeals, and the judgment of the trial court should have been reversed and the case remanded.

We recommend that the judgments of the Court of Civil Appeals and of the district court be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

CURETON, C. J.

The judgments of the district court and Court of Civil Appeals are both reversed, and cause remanded to the district court.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.