Andrew Z. THOMPSON et al., Appellants
and Appellees,

v.

The CITY OF WEST LAKE HILLS et al.,
Appellants and Appellees,

No. 11765.

Court of Civil Appeals of Texas,
Austin.

July 22, 1970.

Rehearing Denied Aug. 31, 1970.

Turman & Mitchell, Graves, Dougherty, Gee, Hearon, Moody & Garwood, William L. Garwood, for City of West Lake Hills. H. Glenn Cortez, City Atty., Richard E. Tulk, Asst. City Atty., for City of Austin.

Ned Granger, County Atty., for State.

James A. Brady, Stayton, Maloney, Black, Hearne & Babb, John W. Stayton, Austin, for Andrew Z. Thompson and others.

HUGHES, Justice.

This suit was instituted by Andrew Z. Thompson of Bexar County, Texas, Sterling Holloway, Thalbert R. Thomas, Emmett Shelton, Sr., Harvey H. Lane, Jr., William G. Poole, John Ledbetter and wife, Frances Ledbetter, John W. McBrine and wife, Marion McBrine, Mrs. S. J. Treadway, a feme sole and W. H. Watson and wife, Alexzena Raines Watson of Travis County, Texas, hereinafter called Plaintiffs, against the City of West Lake Hills and Eddie G. Woolley, its Mayor.[1]

Plaintiffs alleged that they are the owners of property within the boundaries claimed to form the City of West Lake Hills and of large undeveloped acreages within the Wilkenson-Sparks Survey, the David Thomas Survey, the Wm. Brown Survey, the Wm. McCutcheon Survey, the A. L. D. Benham Survey No. 503, the T. J. Chambers Survey No. 504, and the Thomas Gray Survey of Travis County, Texas, situated on the west side of Lake Austin, the same being acreage not incorporated within the corporate limits of the City of West Lake Hills, but part of the territory over which the City of West Lake Hills attempts to exercise exclusive extraterritorial jurisdiction, by virtue of a so-called "incorporated buffer zone," surrounding the territory.

Plaintiffs prayed that the incorporation of the Village of West Lake Hills be declared to be invalid and of no force and effect; that the annexation by the Village of West Lake Hils of the so-called "incorporated buffer zone" be declared to be invalid and of no force and effect; that the territory surrounded by the "incorporated buffer zone" be declared to be within the extraterritorial jurisdiction of the City of Austin to the extent it is within five miles (5 mi.) of the corporate boundaries

of the City of Austin, and within the overlapping extraterritorial jurisdiction of West Lake Hills and the City of Austin, to the extent it is within one-half mile (½ mi.) from the corporate boundaries of the City of West Lake Hills, and five miles (5 mi.) from the corporate boundaries of the City of Austin; that the Defendant City of West Lake Hills and its officials, agents and employees, be enjoined from attempting to annex or to obtain petitions for annexation of any territory surrounded by the "incorporate buffer zone" until the validity of the incorporation of West Lake Hills, the validity of the annexation of the "incorporated buffer zone," and the status of the extraterritorial jurisdiction of the territory surrounded by the "incorporated buffer zone" can be determined.[2]

The City of Austin intervened and following appropriate allegations prayed that it have judgment that the incorporation of West Lake Hills, insofar as it attempts to incorporate territory already in the City of Austin, be declared invalid and of no force and effect; that the annexation of the village of West Lake Hills of the so-called "incorporated buffer zone" be declared to be invalid and of no force and effect.

The State of Texas acting by the County Attorney of Travis County was permitted to intervene on relation of the City of Austin against the City of West Lake Hills as in quo warranto. The relief sought by this pleading was that the prayer made by the City of Austin be "ordered."

We will notice other pleadings in the case only as may become necessary.

The trial was without a jury and at its conclusion judgment was rendered January 9, 1970,[3] that portions of the City of West Lake Hills as originally incorporated and certain annexing ordinances of such City

---

1. Mayor Woolley filed no pleadings and is not mentioned in the judgments and we assume he was named for process purposes only.

2. The Trial Court severed from this suit the issue of apportionment of the overlapping extraterritorial jurisdiction of the two cities into a separate suit.

3. All dates are 1970 unless otherwise stated.

were void and of no effect. The general purport of this judgment was that all territory north of Bee Creek as originally incorporated and the buffer zone or strip west, north and northwest of the City of West Lake Hills attempted to be included in the boundaries of the City were not validly included.

All parties except City of Austin, as shown in the judgment, excepted to this judgment and gave notice of appeal to this Court, the Plaintiffs insofar as the judgment denied them the additional relief sought, the State insofar as it was denied relief sought in its Information in Quo Warranto and the City of West Lake Hills insofar as the judgment granted other parties any relief. On January 13, the City of Austin filed its exception and notice of appeal insofar as it was denied relief sought in its plea of intervention.

West Lake Hills filed a motion for new trial on January 19. This motion was overruled by court order on February 20.

On January 26 Plaintiffs filed their appeal bond appealing from the judgment insofar as it denied them judgment invalidating the incorporation of West Lake Hills in its entirety.

Since Art. 2072, V.A.C.S. exempts the State and incorporated cities and towns from giving security for costs, the appeals of all parties were timely in the Trial Court.

On February 5 the Trial Judge entered a "Corrected Final Judgment." This judgment was identical with the judgment of January 9, including exceptions and notices of appeal, except that it rendered judgment for costs which was not done in the first judgment.

On February 11, Plaintiffs filed a motion for new trial as to the "Corrected Final Judgment."

On February 16, West Lake Hills filed a motion for new trial as to the "Corrected Final Judgment."

On February 20 the motions for new trial as to the "Corrected Final Judgment" were overruled by court order.

On March 9, West Lake Hills filed notice under Rule 353, Texas Rules of Civil Procedure that it was appealing only from that portion of the final judgment in this cause which was adverse to it, as above indicated.

Transcript reflecting the above matters was filed in this Court on March 9.

On April 1 there was filed in this Court a supplemental transcript containing findings of fact and conclusions of law made by the Trial Judge, and incidental matters pertaining thereto.

On June 11 a supplemental transcript was filed here which included a judgment nunc pro tunc entered June 4 as of February 5 which changed the word "invalid" as used in this partial sentence of such judgment, "the original incorporation of territory south of Bee Creek into the City of West Lake Hills is hereby declared invalid" to "valid." This change was made on the motion of West Lake Hills to correct a clerical error in the February 5 judgment. A separate motion for entry of a judgment nunc pro tunc was filed by Plaintiffs. This motion was overruled except insofar as it was granted in response to the motion of West Lake Hills to correct a clerical error in the February 5 judgment.

On June 15 Plaintiffs filed notice of appeal from the judgment entered June 4 insofar as it denied them judgment "invalidating the City of West Lake Hills in its entirety." On the same day Plaintiffs filed their appeal bond from this judgment, limited as indicated in their notice of appeal.

We have stated the above details of the record for the reason that we must dispose of two motions to dismiss appeals, one filed by West Lake Hills to dismiss the appeals of Plaintiffs and State ex rel City of Austin and City of Austin, and one by

Plaintiffs to dismiss the appeal of West Lake Hills.

West Lake Hills seeks to dismiss the appeal of Plaintiffs on the principal ground that this is a quo warranto proceeding and the record, under Rule 384, T.R.C.P. must be filed in this Court within twenty days after final judgment or order overruling motion for new trial. As to Plaintiffs this suit is not one in quo warranto. Plaintiffs do not have and do not claim to have the authority to bring quo warranto proceedings. Plaintiffs sued to prevent damages to their property by the City of West Lake Hills without due process of law. The fact that the Trial Judge in permitting quo warranto proceedings to be filed by the State on behalf of the City of Austin recited that it was thus "making the suit in the nature of a quo warranto proceeding" does not alter the nature of the suit brought by Plaintiffs. The State did not purport to appear or pealed on behalf of Plaintiffs. We do not construe the language of the Trial Court to be other than that the suit was in the nature of a quo warranto proceeding insofar as the State made it so.

This was a sixty day appeal as to Plaintiffs. Rule 386, T.R.C.P. The record was filed on March 9 well within sixty days from February 5. This brings us to the attack made on this judgment. It is to be noted that this judgment was entered within 30 days from the date of the first judgment. During this period the judgment is not final and is subject to the control of the Trial Judge. Sec. 5, Rule 329b, T.R.C.P.; Ex parte Godeke, 163 Tex. 387, 355 S.W.2d 701 (1962); 4 McDonald, Texas Civil Practice, Sec. 1803. This is true even though an appeal has been perfected from the judgment. 33 Tex.Jur.2d, Judgments, Sec. 139, p. 662, and cases there cited.

The appeal bond filed by Plaintiffs on January 26 insofar as the judgment of February 5 is concerned is effective as a bond prematurely filed under Rule 306c, T.R.C.P. If this bond is in any way inadequate or defective, it may be amended. Rule 430, T.R.C.P.

The record discloses that the Trial Judge was concerned, upon the matter being called to his attention, that the judgment of January 9 was not a final judgment because of its failure to adjudicate costs. It was proper and within his sound discretion to eliminate this uncertainty. There is nothing to indicate that he took this action in order to extend the appellate process. The alteration in the judgment was substantial and, clearly to us, the "Corrected Final Judgment" superseded and replaced the original judgment.[4] The motion to dismiss the appeal of Plaintiffs is overruled.

For the reasons above stated, we also overrule the motion to dismiss the appeal of the City of Austin. The City of Austin did not file a quo warranto proceeding. Its right to appeal is independent of such proceeding filed by the State and is a sixty day appeal. The timely notice of appeal filed by such City on January 13 was carried forward and applicable to the February 5 judgment under Rule 306c. It was not required to give bond.

The quo warranto proceeding filed by the State against the City of West Lake Hills is subject to Rule 384, T.R.C.P. requiring the record to be filed in this Court within twenty days after judgment or judgment overruling motion for new trial.

Motion for new trial was filed by the City of West Lake Hills on February 16 and was overruled on February 20. The record was filed here on March 9, within twenty days of such order overruling such motion. The motion to dismiss the appeal of the State of Texas is overruled.

We also overrule the motion of Plaintiffs to dismiss the appeal of the City of West Lake Hills on the ground that

4. To "correct" is "to make right; to rectify; * * * to amend; * * * remove faults or errors in." Webster's New Twentieth Century Dictionary, Unabridged 2nd Ed., The World Publishing Co., 1960, p. 410.

it did not except to and give notice of appeal with respect to the nunc pro tunc judgment entered on June 4. We believe these grounds are not factually supported. The judgment of June 4 was not a complete judgment. It only corrected the judgment of February 5 which contained a clerical error. Standing alone the June 4 judgment adjudicated nothing. Only by reference to the February 5 judgment does it have meaning. This judgment, February 5, contains an exception and notice of appeal by the City of West Lake Hills. We need not determine whether the June 4 judgment or order is an appealable judgment. However, if it is an appealable judgment we believe the provisions of Rule 306c are applicable.

The major issues in this case are whether the boundaries of the City of West Lake Hills as originally incorporated included portions of the City of Austin and, if so, the effect of such conflicts, particularly in view of validating acts passed by the State Legislature.

■ The Trial Court found the existence of such conflicts and declared the original incorporation of West Lake Hills north of Bee Creek to be void and of no effect. We agree that the evidence fully supports the conflicts found.

There are several thousand acres practically surrounded by the City of West Lake Hills and cut off from the possibility of annexation by the City of Austin. About 760 acres of this land is owned by Plaintiffs, some of it being in the strips incorporated in or annexed to the City of West Lake Hills, but most of which is without the City.

The interest of Plaintiffs in this controversy is very substantial. The lands owned outside the City receive no municipal services from either of the two cities involved. The services especially required by these lands in order that they may be properly developed are water and sewage. The evidence as to the substantial damage sustained by these lands, and their owners, because water and sewage are not available is overwhelming and practically without dispute.

The original incorporation of the City of West Lake Hills was not for town or village purposes.[5] It was just the opposite. Its incorporation was for the purpose of never becoming a town or village and from ever being included in a town or village. Its incorporation was a sham. Its incorporation was for purely private purposes as is evidenced by the policy statement unanimously adopted by the incorporators at a town meeting January 25, 1954, from which we quote:

"We, the bona fide voters and residents of the village of West Lake Hills, an incorporated village on the west shores of beautiful Lake Austin, do hereby declare and set forth our reasons for incorporating our Village at the election held last August 29, 1953, by the unanimous vote of 73 to 0, and our reasons for residing in this community, to the end that the same conditions may prevail in the future that made this community an attractive residential area in the first place, and that these conditions remain a permanent aspect of our community and village life. We declare our desire and our earnest intention to maintain and to preserve those conditions and those policies which caused us to move into this area in the first place, and which have caused us to maintain our residence in this community since it was opened up for residential purposes. * * *

A second reason for our residing in this community is that we have desired to escape the burdensome and onerous taxes that weigh so heavily upon all residents living within the boundaries of the average American city today. We,

5. In Petition of Schulz, 1 Misc.2d 1063, 149 N.Y.S.2d 646, it is said that a "town" is a municipal corporation created for the purpose of exercising and discharging duties of local government and administration of public affairs within its confines.

who live in this village of West Lake Hills, fled to this section in order to escape this constant source of irritation and worry. We intend to keep the Village of West Lake Hills free of the burden of local taxes as far as it is humanly possible to maintain this aspect of our community life, since it was one of the principal reasons for our moving into this area in the first place.

\*　　\*　　\*　　\*　　\*　　\*

It is the earnest desire of all the people of the Village of West Lake Hills, to live their lives in quiet peace and tranquillity amid the beautiful surroundings of their countryside, and to provide, each for himself and for his family, such conveniences, facilities, and comforts, as each may desire for himself, such as water supply, sewage disposal, landscaping, recreational facilities, etc., and not to impose upon the people of the Village the burden of providing these comforts and conveniences for any individual or for the community at large. It is the prayerful and heartfelt wish of the residents of West Lake Hills that they may be permitted to live their lives with the least interference from any outside influences that might become annoying or burdensome, and thus to live in serenity and calm content amid the beauties of nature so lavishly provided by the Almighty."

The City of West Lake Hills has lived up to its policies fairly well. It owes no money, levies no taxes. It does not furnish water, sewage, garbage collection, power or fire protection. It does not maintain its streets, many of which are narrow and in a bad state of repairs. It owns no parks and furnishes no recreation facilities. It does furnish police protection, zoning protection, health protection, subdivision control and has a building code.

6. Art. 1134, V.A.C.S., under which the City of West Lake Hills was incorporated provides, in part, that the application to incorporate a town or village shall state its boundaries and be accompanied by a

The Trial Court found that the City of West Lake Hills in isolating the land owned by Plaintiffs and other similarly located lands was not for any legitimate municipal purpose, "but was solely for the purpose of preventing its being annexed and served by the City of Austin." The present Mayor of the City of West Lake Hills, Mr. Eddie Woolley, so testified.[6]

The Trial Court found that, "The failure of the City of West Lake Hills to provide a sanitary sewer system has resulted in the proliferation of septic tanks within the City of West Lake Hills, and the existence of a proliferation of septic tanks on the west short of Lake Austin is a pollution threat to the chief source of drinking water for the City of Austin, requiring that the city of Austin take an active role in planning for urban development along the west shore of Lake Austin."

That the attempted incorporation of the "'incorporated buffer zone' included and encircled an area unrelated to the economic and municipal needs of the City of West Lake Hills, and has arbitrarily and to the detriment of the City of Austin prevented the City of Austin from exercising economic and political control over the west bank of Lake Austin. The area surrounded by the 'incorporated buffer zone' bears a much greater economic relationship to the City of Austin than it does to the City of West Lake Hills.

That the area comprising several thousand acres of land lying west and northwest of Bee Creek adjacent to and bordered on the east, north and northwest by the City of Austin, is an area that but for the artificial buffer zone attempted to be created by the City of West Lake Hills would be within the immediate normal growth pattern of the City of Austin and would be served by the City of Austin with a water supply, sewage system and other municipal services that the City of

plat and shall include "*therein no territory except that which is intended to be used for strictly town purposes.*" Italics ours.

West Lake Hills has no plan, prospect or intention of supplying.

That the reasonable and best economic use of the above described area is for development as a residential area containing several thousand homes; and that such homes in such numbers, built without a sewage disposal system but utilizing septic tanks, would by reason of the nature of the terrain and soil create a danger of pollution of Lake Austin, the source of the water supply for the City of Austin, and the West Lake Hills area, and would result in serious hazard to the public health."

It is not questioned but that these findings have support in the evidence.

The area north of Bee Creek originally incorporated, which was invalidated by the Trial Court is depicted on a portion of the plat filed by the original incorporators shown below:

(This plat is drawn to scale)

[A 2622]

---

The field note calls to this area, certified at the time of incorporation, read as follows:

"THENCE along the north edge of West Lake Drive to Wild Cat Hollow proper, at which point West Lake Drive turns north, then on the east side of West Lake Drive across Bee Creek to where West Lake Drive turns east; then along the south side of West Lake Drive to where it turns north at Yeatman's land; then on the east and south sides of West Lake Drive as it turns north to the south line of McBrayer's land;

THENCE westerly, northerly and easterly with McBrayer's line to West Lake Drive;

THENCE easterly across West Lake Drive to the east side thereof;

THENCE along the east side of West Lake Drive to the north line of Dan Grieder's land;

THENCE easterly with Grieder's north line to the city limit line of the City of Austin;

THENCE southerly with the city limit line of the City of Austin to the place of beginning."

To these calls should be added the beginning call reading as follows:

"BEGINNING at a point in the city limit line of the City of Austin, which point is located at the southeast corner of tract of land known as the 'James Tract' heretofore conveyed by Emmett Shelton to the City of Austin, said point being on the west line of the H. B. Hill League and on the east line of the Wilkinson Sparks Survey in Travis County, Texas;" [This point is on Bee Creek]

With respect to the city limit line of the City of Austin referred to in the above field notes, the Trial Court found:

"That on the 9th day of September, 1953, and all dates subsequent thereto, the city limit line of the City of Austin on the west and south bank of Lake Austin north of Bee Creek and for a distance in excess of fifteen (15) miles north along the west and south bank of Lake Austin was at a contour elevation of 504.9 feet above mean sea level.

That the physical location of the contour elevation of 504.9 feet above mean sea level along the west and south bank of Lake Austin has not changed materially between September of 1953 and the date the judgment was entered in this cause."

The City of West Lake Hills challenges these findings as not being supported by the evidence. We overrule these contentions.

The City of West Lake Hills introduced in evidence one of its official maps which bore this notation: "Approximate City Limit Line of Austin and West Lake Hills, common at elevation 504.9'." A similar map with the same notation was introduced by Plaintiffs, without objection, under Art. 971a, V.A.C.S. as an official map of the City of West Lake Hills.

We believe that the location of this 504.9' contour line in 1969 is some evidence of its location in 1953. See Ross v. Green, 135 Tex. 103, 139 S.W.2d 565 (1940). In addition, there is testimony in the record from Mr. Emmett Shelton who has known the area since 1930 that the topography of the area is such that no change in this contour line has occurred since 1930 as to this area. Other witnesses testified to the same effect. The case was tried by all parties on the assumption that the 504.9 contour line was the westerly city limit line of Austin.

The 504.9 contour line fixing the west (so-called) city limit line of the City of Austin was located on the ground by points established through actual surveys and the accuracy of these points is not questioned except as above and hereinafter noted.

With reference to this contour line and the field note calls used in the original incorporation of the City of West Lake Hills, the Trial Court found that, as shown by Plaintiffs' Exhibits, in the vicinity of Isaac's Slough, in the vicinity of lots 35–41 of the Lakeshore Addition in the vicinity where the Bee Creek arm of Lake Austin crosses West Lake Drive, the west city limit line of the City of Austin is west of the most westerly purported city limit line of the City of West Lake Hills, the result being that at these places areas purportedly within the original Village of West Lake Hills lie wholly within the corporate boundaries of the City of Austin, and areas within the City of Austin completely separate into five non-contiguous tracts the area attempted to be included in the City of West Lake Hills. The court further found that at Bee Creek an area within the City of Austin wholly separates the area north of Bee Creek attempted to be incorporated into the Village of West Lake Hills from the area south of Bee Creek attempted to be incorporated into the Village of West Lake Hills. Because of the conflicts, the Trial Court found that the incorporation field notes do not close to define a specific area.

The evidence to sustain these findings is abundant in the record and we do not set it out fully for the reason that the City of West Lake Hills does not attack such evidence except in particulars which we will notice but relies upon what it considers as the proper legal construction of the original corporate boundaries as reflected by the field notes under discussion. Our basis for this statement is found in the brief of West Lake Hills from which we quote:

"The first grouping of points for argument presents basically the contention that there was no evidence that the original incorporation of West Lake Hills included any parts of Austin. The

principal bases on which this contention is made are: (a) that a proper construction of the original incorporation field notes and plat, together with the trial court's finding of no intent to include parts of Austin, is that parts of Austin were not included thereby, and any calls or construction indicating to the contrary should be disregarded; (b) that, if the foregoing be rejected, in any event the asserted proof of conflict with Austin rested entirely on the assumption that Austin's city limit line in 1953 was the 504.9 contour line, but there is no competent evidence of this in the record; and (c) even assuming it was proved that Austin's 1953 city limit line was the 504.9 line, a proper construction of this line would eliminate the claimed conflicts, and the 1969 surveys on which the findings of conflict were based were not, for various reasons, adequate to show the claimed conflicts."

We reject this construction of the field notes. The Trial Court found and it goes unsaid that the incorporators of West Lake Hills did not intend to include any portion of the City of Austin within the boundaries of West Lake Hills. In fact, the record shows that such incorporators shunned any official tie to the City of Austin as it would shun the plague. They wanted nothing to do with the City of Austin and wanted the City of Austin to have nothing to do with it.

The position of West Lake Hills, if sustained, would require us to disregard settled laws of boundaries and to re-write the field notes under which the City was incorporated.

There are, of course, two sides of the strip extending from Bee Creek to Grieders, the west side and the east side. As shown above some of the areas within the City of Austin penetrate the entire strip, completely cross it. The west side of this strip is located on the ground by calls for natural objects such as West Lake Drive, Wild Cat Hollow, Bee Creek, Yeatman's land, McBrayer's land and Dan Grieder's land, all of which are easily located on the ground and the location of which, except for some dispute as to a portion of West Lake Drive, are uncontroverted. These calls simply cannot be ignored.

The east line of this strip calls for the city limit line of the City of Austin. Mr. Emmett Shelton who prepared the plat accompanying the original incorporation field notes, a portion of which we have reproduced herein, was mistaken as to where the true west city limit line of the City of Austin was. He testified:

"I tell you what the basic fallacy that we went on was that 492 was the level of the dam, and that was the only contour we heard of then, 492, and we figured that anything above 492 was Outside the City of Austin. I hadn't heard of this 504.9 at that time at all, but I did know 492; that's the height of the dam."

While a call for the boundary line of another survey will ordinarily be construed as a call for the true location of that survey, this rule does not apply when the line called for is incorrectly located on the ground and the call is for the incorrect location. Here the evidence is and the plat shows that the call for the city limit line of the City of Austin was based on mistake and was for the line as erroneously located.[7] The City of Austin west line as shown on the plat is not its true west line. This line according to the plat, lies some distance east of the west line of the strip. But in fact, the true west line of the City of Austin lies west of such west line. What the City of West Lake Hills seeks to do is to change the common boundary line between West Lake Hills and Austin as shown on the plat so as to coincide with the true west line of the City of Austin and then to terminate its west line at every point it touched or crossed its true east line.

7. Such calls should be disregarded: Frost v. Socony Mobil Oil Co., 433 S.W.2d 387 (Tex.Sup. 1968).

In other words, West Lake would have us ignore the natural objects called for in the field notes and shown on the plat at any point at which Austin's west line, when correctly located, crossed or touched its west strip line as correctly located. This construction would create separate and unconnected parcels of land. This construction would violate the intention of the incorporators as shown by their field notes and plat which clearly contemplated creating: a long narrow, contiguous and continuous strip of land with its west line tied to natural objects and its east line east of its west line at the distances shown. These intentions, vividly shown, overwhelm any intention that the involved cities should have a common line as contended. See Stanolind Oil and Gas Co. v. State, 129 Tex. 547, 101 S.W.2d 801, 104 S.W.2d 1 (1937), Boundaries, 9 Tex.Jur.2d, Sec. 28.

While the City of West Lake Hills offered no locative testimony as to the areas involved it criticizes the evidence offered by Plaintiffs in some respects, some of such criticisms we have noticed, others will now be discussed.

■ Complaint is made that "a bench mark" used by witnesses in locating the 504.9 contour line was not properly established. Mr. B. F. Priest, a Registered Public Surveyor, testified that in locating this contour line he began with a bench mark established by the City of Austin.[8] There was no objection to this testimony and we are not referred to any cross examination of Mr. Priest respecting his use of this bench mark. A bench mark has been defined as "a mark on a fixed and enduring object, indicating a particular elevation, and used as a reference in topographical surveys." Ace Construction Co. v. United States, 401 F.2d 816, 185 Ct.Cl. 487 (1968). It is not disputed that this bench mark was established by the City of Austin, a governmental agency. Furthermore, surveyors must start somewhere and they usually start from recognized points the location of which is not questioned. This is the situation here. The use of bench marks, not shown to be improper, was permissible.

West Lake Hills finds fault with the surveying results in the vicinity of the McBrayer land. In order to portray this dispute we reproduce Plaintiffs' Exhibit 6. The tracts Nos. 1, 2 and 3 are the McBrayer land.

[A 2623]

8. Mr. Priest also testified: "We established points on 504.9 contour and used a line of nails in West Lake Drive that had been set there by the City of Austin, and they had elevations which the city had run out on them. We used them for bench marks * * * "

The field notes, copied above, call for "West Lake Drive as it turns north to the south line of McBrayer's land and thence westerly, northerly and easterly with McBrayer's line to West Lake Drive."

West Lake Drive does not make contact with the No. 3 McBrayer tract but does touch the south line of smaller tracts, "1." Plaintiffs' surveyor then, literally following the field note calls, places the city limit line of West Lake Hills along West Lake Drive until it reaches the southeast corner of McBrayer tract "1", then proceeds westerly along the south line of tract "1" to its southwest corner; then goes northerly along the west lines of tracts "1" and "2;" then proceeds easterly with the north line of tract "2" to West Lake Drive. We find no fault with this surveying and field note construction.

West Lake Hills would include all of the McBrayer land within its original city limits and thus eliminate, in this area, conflicts with the City of Austin. To do this it would consider the call for West Lake Drive to be a call for a road called by some as "Lake Shore Drive" at point 4 shown on the above plat, and shown by testimony of Mr. William Kingsbury, Supervisor of Survey Parties for the City of Austin, to be a road in existence southwesterly of point "4" and terminating at such point.

West Lake Hills relies on the plat filed with the original field notes for the City which shows the McBrayer property in the form of a square. The error in this configuration is readily established. West Lake Drive does not touch the McBrayer tract "3." The city limit line after surrounding the McBrayer land, as per the field notes, returns to West Lake Drive and not to Lake Shore Drive to the west. It also appears that if the southerly line of McBrayer tract "3" were extended east to West Lake Drive the form of the McBrayer land would be a square as shown on the original city plat. This illustrates the error made by Mr. Shelton in drawing

this plat. He mistakenly drew the city limit line around McBrayer tract "3" rather than, as the field notes required, around McBrayer tracts "1" and "2."

The field notes here being unambiguous and evidence concerning Lake Shore Drive, referred to above, having been approved by findings of the Trial Court we find no sound basis for adopting the construction of the field notes as advocated by West Lake Hills. Even the original plat so heavily relied upon by West Lake Hills makes West Lake Drive the west line of its city limits in this area except as indented by the McBrayer lands.

West Lake Hills attacks as speculative and conjectural the finding of a conflict of 35 feet between the two cities as shown on the plat last above reproduced at a point marked "X." This conflict, it states, is based on the supposition that a line on an aerial photograph was a fence indicating a property line marking the city limit line of West Lake Hills. Mr. Kingsbury testified that on the aerial map there was "A little fine line there like a sendero along a fence line * * *. It was represented in my surveyor's field notes that he crosses a fence at that point." While no independent survey was made of the tract in question, Bennett's, we believe the testimony as to the fence and its location as shown on the aerial map is some evidence of the Bennett property line sufficient to sustain the finding of the Trial Court.

West Lake Hills presents under its second grouping of points of error its contention that even though there are some conflicts between the original boundaries of itself and the City of Austin that these conflicts should be disregarded under the minimis rule.[9] We overrule this point.

The longest overlap is approximately 1360 feet, from Point A to Point B shown on the plat above. It is about 50 feet wide. It separates that portion of the City of West Lake Hills lying south of

---

9. "De minimis non curat lex."

Point "A" from the area beginning at Point "B" by a quarter of a mile. In other words, one part of the City of West Lake Hills, if its incorporation is sustained, would be separated from another part by 1360 feet.

The overlap in the vicinity of Isaac's Slough is approximately 1300 feet by 160 feet.

The overlap in the Bee Creek vicinity the west city limit line of the City of Austin projects west of the west city limit line of West Lake Hills by 170 feet.

■ We do not consider these overlaps or conflicts to be so small as to constitute a trifle under the rule that the law takes no notice of trifles. What is a trifle is often a relative term. Here, when we consider that the elongated strip sought to be incorporated in the vicinity of these overlaps is itself only 25 feet wide in some places, we cannot regard areas 1300 feet by 160 feet and 1360 feet by 50 feet as being mere trifles.

We are doubtful that the de minimis doctrine applies to land matters. See Annotation in 44 A.L.R., p. 68, Perkins v. Raitt, 43 Me. 280; Kelton v. Saylor, 211 Ky. 739, 277 S.W. 1026 (1925); Whittaker v. Stangvick, 100 Minn. 386, 111 N.W. 295 (1907); Mulrein v. Weisbecker, 37 App.Div. 545, 56 N.Y.S. 240 (1899). In any event, we hold that the doctrine invoked, applicable or inapplicable, should, under this record, be rejected.

The third grouping of points by West Lake Hills presents the contention that there was no showing that the original West Lake Hills incorporation was noncontiguous but, if so, such noncontiguity should be disregarded under the rule of de minimis.

Earlier in this opinion we have found that the area included in the boundaries of West Lake Hills as originally incorporated was not one contiguous tract of land and we will not rediscuss such holding. We will answer the contention made that the law does not require a town or village to be constituted of one contiguous tract of land.

There is no express statutory provision that towns and villages should consist of continuous and contiguous territory. Art. 1135, V.A.C.S., applicable to West Lake Hills, provides the manner in which such towns may annex " * * * any territory adjoining the limits of any town or village. * * *"

Art. 1134, id. provides that the application to incorporate should state "the boundaries of the proposed town or village * * * including no territory except that which is intended to be used for strictly town purposes."

It would be impractical and nigh impossible for a town to furnish municipal services to areas wholly separated from each other by lands governmentally controlled by other political units. If the incorporation of West Lake Hills in separate bodies of land is sustained it would have to traverse land within the City of Austin in order to furnish all its inhabitants water and sewage and police and fire protection. These are only some of the problems which readily come to mind. Also, the question immediately arises, by what distance could different parts of the town be separated?

The fact that a town may annex only adjoining territory implies that the limits of the town encompass one area only. If a town consisted of several widely separated areas the problem of annexing adjoining territory would be insurmountable.

In State ex rel. Wilke v. Stein, 26 S.W. 2d 182, Tex.Com. of App. (1930), it was stated:

"Every statute in the state which mentions the essential characteristics of a town or village, such as that of Fredericksburg, incorporates, as one of them, the number of inhabitants thereof, thus indicating that it was the intention of the Legislature in authorizing the incorporation of villages, towns, and cities

to require as one of the essentials the existing of one continuous and contiguous territory, within which are living a certain number of inhabitants."

We follow this statement of the law and hold that a town or village must consist of one contiguous and continuous tract of land.

West Lake Hills in its fourth, fifth and sixth grouping of points complains of Trial Court rulings regarding various annexations undertaken by it. We refrain from discussing these points for the reason that such annexations fall with our decision that the original incorporation of the City of West Lake Hills was null and void.

Under its seventh and eighth points of error West Lake Hills contends that under the pleadings and evidence none of the parties adverse to it were entitled to judgment invalidating that portion of West Lake Hills lying north of Bee Creek, and particularly that Plaintiffs were not deprived of their property without due process of law by the original incorporation and annexing ordinances. We overrule this point. It is our opinion that, under the evidence, the encircling of Plaintiffs' lands deprived them of their property without due process of law.

Plaintiff Holloway testified:

"Q Now, what has been the effect of this buffer zone or noose insofar as the investment value of your property within the noose is concerned?

A Well, it has virtually destroyed the possibility of making sales of any value that anyone could afford to take; that is, sales on the basis of what you are taxed for.

It has restricted or prevented the development of a value—of a market value comparable to the land across the lake, which is, incidentally, far—not as attractive in its physical contours nor its proximity to the City of Austin.

Q Now, stop right there.

A Yes, sir.

Q You are comparing this property within the noose to property within the City of Austin that is no closer in than your property and is not as beautiful; is that what you are saying?

A Yes; and city property that is even outside of the city or has been outside the City of Austin, but available to be incorporated as a development—in a logical development manner.

Q All right. Now, just compare the values of those two properties, the ones within the noose and these other comparable properties you are talking about; what about their relative value, due to the noose?

A I can give two illustrations, I think, that are about the best way I know of.

Approximately two years ago Mr. Shelton and I sold to the Ray brothers and others the face of a mountain up in the Gray Survey that was very beautiful land and had a panoramic view of the entire City of Austin and the lake below it. We got about $1400 an acre for that less commission, as I recall, and within about a month or two afterwards, a client of mine and I had an interest in trying to adquire a hillside or a mountain that is further up the lake, way up, I would say a mile or two to the northwest of Mr. Thompson's mountain, a 20-acre tract of land that was on the west side of a slope but did have a high elevation, did not have a view. We tried to get a price on it and were quoted a price —or rather, we were quoted an information that $6,000 an acre would not purchase it.

Q Now, was this property that did have access to water and services or not?

A It had access to the City of Austin if as and when it was developed and would be included—I believe it had not yet been included. It was here right to the northwest of the Will Wilson home. I don't believe it was then in the City of Austin. I think it is now.

Q All right. But it did have opportunity to have services supplied by the city?

A Yes.

Q If and when it became advisable; is that correct?

A That's right.

Q Now, what has been the effect, Mr. Holloway, of this noose, in your opinion, upon the values of properties within the noose area?

A I would say that it has decreased its values to where I think it would probably, if you could sell it at all, I don't think you could sell it for more than 25 per cent of what the same land would be without that noose. I have known of negotiations which indicate that.

Q In other words, you think that it would have a value of approximately four times what you can get for it now if you get the services you are talking about?

A I think that is a conservative estimate, Mr. Stayton."

Plaintiffs Shelton, McBrine, Lane and Thomas testified to the same effect.

The property owned by Plaintiffs and affected by the loop created by the City of West Lake Hills totals about seven hundred and sixty acres. The evidence shows that the principal cause of depreciated value of their property is the inability to obtain water and sewage. It is not so much that the City of West Lake Hills has not furnished these essentials and levies no taxes to ever make it possible, it is that the loop has cut Plaintiffs off from ever securing such services from the City of Austin. True, the City of Austin has made no commitments as to what it will do in this regard in the future and, doubtless, it could not legally do so, yet the record is without dispute that Plaintiffs' lands are within the immediate normal growth pattern of the City of Austin and that such City looks favorably on the annexation of this area or in furnishing the needed water and sewage.

Plaintiffs have suffered and will continue to suffer special and irreparable damages if this intolerable situation is permitted to continue. The rationale of Parks v. West, 102 Tex. 11, 111 S.W. 726 (1908) is appropriate. There a taxpayer brought suit to enjoin the levying of taxes by a school district. It was contended that the District was a de facto district and not subject to collateral attack by the taxpayer. In denying this contention and discussing this rule the Court said:

"The rule is founded in public policy and convenience, merely, and is not to be so applied as to defeat the assertion of just legal rights by parties in the courts. * * * the attack of the plaintiffs is not merely upon the corporate existence of the district, but is directed against the power of the defendants to lay burdens on their property and subject them to the payment of taxes. Surely they have the right to do that although the reason they assign for the lack of power may also go to the right of the district to exist under the Constitution. Certainly a property holder has the right to say to the court that he is protected by the Constitution from the imposition of a tax by persons to whom the Constitution, in effect, denies such power. If the rules relied on by defendants should preclude plaintiffs from making the contention now, when and in what way could they make it?

So far as we can see, the rule would equally apply to an effort to resist the collection of the tax by suit or otherwise. The consequence to which the contention leads is that, while the Constitution does not permit such a school district to exist and levy taxes, it may yet do both and force property owners to pay until the officers of the State see fit to intervene. Useful and convenient as is the doctrine invoked, we can not give our assent to an application of it, which would deny to the plaintiffs the protection sought of their property rights."

The damaging encirclement of Plaintiffs' lands has been accomplished through the acts of the city which never had any legal existence. Plaintiffs had the right, in our judgment, to collaterally attack the incorporation of West Lake Hills as void in order to prevent their property from being permanently damaged without due process of law, a void proceeding producing such results not being due process.[10]

By its ninth point and its tenth grouping of points the City of West Lake Hills asserts that the Trial Court erred in invalidating its original incorporation north of Bee Creek and various annexing ordinances on the ground of public policy, if it did so hold. If the Trial Court held to this effect, and this is by no means clear, we do not base our decision in any respect on this ground.

 The eleventh and twelfth grouping of points by West Lake Hills relates to acts of the Legislature which it is contend-ed validate its entire original incorporation and various annexations, at least to the extent that they do not conflict or include any portion of the City of Austin. We overrule these points.[11]

 West Lake Hills concedes, when it states that the Legislature has the power "to validate it so far as it does not include the City of Austin," and again when it states, "the validating acts were sufficient at the least to validate so much of the original incorporation as did not include any part of the City of Austin" that, in effect, the entire incorporation of West Lake Hills has not been validated. The question then arises as to whether the validating acts can be construed to partially validate an incorporation or an annexation. We hold that they cannot be so construed. The validating acts simply do not contemplate or effect partial validation. For example, Article 966e provides that "The areas and boundary lines of all such cities and towns affected by this Act are in all things validated." The same language is contained in Articles 966f and 974d–11 and in the other validating acts relied upon. The clear purpose of the validating acts, therefore, is to validate an original incorporation or an annexation in its entirety. There is not a sentence or a word in any such act indicating the intent to validate an original incorporation insofar as it does not include territory within the corporate limits of a home rule city.[12]

To give the validating acts the effect sought would result in the creation of a municipality consisting of several segments

10. See Constitutional Law, 16 Am.Jur.2d Secs. 545–50. "It has been said that protection from arbitrary action is the essence of substantive due process, and, similarly, that, in substantive law, due process may be characterized as a standard of reasonableness." " * * * 'due process of law' asserts a fundamental principle of justice * * * "

11. The validating Acts relied on are Arts. 966e, 966f, 966g, 966h, 974d–4, 974d–5, 974d–6, 974d–9, 974d–11, 974d–13.

12. In Perkins v. State, 367 S.W.2d 140, Tex.Sup.Ct. (1963) Justice Walker in dissenting but in agreement with the Court on the point under discussion stated, "Petitioners would have us disregard the references to the federal census on the ground that a validating act must be liberally construed to effectuate the purpose of its enactment. The Court properly rejects this argument, because *the rule of liberal construction does not justify our giving the statutes an effect not intended by the Legislature.*" (Italics ours)

of land completely separated one from the other. Our laws do not allow the creation of any such governmental malformation and the Legislature certainly never intended through its validating acts to create one.

The purpose of a validating act is to effect the intent of those responsible for the original incorporation in an instance in which an attempt has been made to comply with the procedure provided by law but there has been some miscarriage. The Legislature effects the intent of those who sought to establish the municipal corporation by validating their action despite the failure to comply strictly with the law.[13] But to validate the original incorporation of West Lake Hills insofar as it does not purportedly include territory within the corporate limits of intervenor is not to effect the intent of the original incorporators. They sought to create a municipal corporation consisting of a continuous and contiguous body of land. To validate their action in the manner sought would result in the creation of a municipal corporation consisting of isolated segments of land, something never contemplated by the original incorporators.

The deformed creature that would be born if West Lake Hill's original incorporation and its ordinances of annexation should be validated, insofar as such do not purportedly include any part of the City of Austin, defies description. On the east and south of Bee Creek West Lake Hills would consist of a more or less compact body of land. North of Bee Creek it would consist of noncontiguous, long, narrow strips. To the west of the Davenport ranch it would extend north to the vicinity of Lake Austin.

That the Legislature never intended to validate any such incorporated area is plain.

In State ex rel. City of Everman v. City of Fort Worth, 363 S.W.2d 500, Fort Worth

Civ.App., writ ref. n. r. e. (1962) the Court held void ordinances annexing areas within the jurisdiction of another municipality and that they were not validated by Legislative validating acts, the Court saying:

"In Bigfoot Ind. School Dist. v. Genard, Tex.Civ.App., 116 S.W.2d 804, it was said: 'It is conceded, and is obvious, that the Legislature has no power to validate an act which it did not have the power to authorize in the first instance; it cannot ratify an act it cannot authorize.' In re American Rio Grande Land & Irr. Co., D.C., 21 F.Supp. 492, we find the following: 'Validate is a derivative of valid, and means to make valid; to confirm. * * * These definitions presuppose antecedent facts which, in themselves, though attempting validity, had been insufficient to accomplish it. They cannot and do not mean that out of a clear sky, without supporting evidence, the Legislature may validate something that in fact never existed.' "

■ It is true that the Legislature may validate as void incorporation of a town, Perkins v. State, 367 S.W.2d 140, Tex.Sup. Ct. (1963), unless constitutionally prohibited. See State v. Bradford, 121 Tex. 515, 50 S.W.2d 1065 (1932), City of Arlington v. City of Grand Prairie, 451 S.W.2d 284, Tex.Civ.App., Forth Worth, writ ref. n. r. e. (1970). The Federal and Texas Constitutions stand in the way of West Lake Hills and the Legislature in committing any act which results in the taking of property without due process of law. This is the effect of what West Lake Hills has done to Plaintiffs and would be the effect of the validating acts if they are to be applied to West Lake Hills.

West Lake Hills in its thirteenth and last grouping of points presents the contention that since neither the State nor the City of Austin asked that the original incorpora-

---

13. "The very object of curative or confirmatory acts is to give effect to the intention of parties to enable them to carry into effect that which they have designed and attempted, but which failed of its expected legal consequences only by reason of some statutory disability or some irregularity in their action." Hunt County v. Rains County, 7 S.W.2d 648, Tex.Civ.App., Texarkana, no writ (1927).

tion of West Lake Hills be invalidated in its entirety but only as to areas conflicting with the City of Austin that it was error to grant more than the relief they sought, it being contended that Plaintiffs had no standing to obtain this relief even though they requested it. We overrule this point and in doing so will consider and determine the appeal of Plaintiffs, the State and the City of Austin.

The State of Texas ex rel. City of Austin and the City of Austin have filed briefs as appellants in which their single point of error is that the Trial Court erred in failing and refusing to hold the original incorporation of West Lake Hills invalid in its entirety since the original incorporation attempted to incorporate therein territory within the corporate limits of the City of Austin.

Plaintiffs make this same point in their brief and, in addition, make the point that the original incorporation of West Lake Hills is void in its entirety for the reason that when the areas lying within the City of Austin are eliminated from the confines of West Lake Hills such town would consist of five noncontiguous tracts.

The State and the City of Austin also take the position that notwithstanding the state of their pleadings they are entitled to relief invalidating the entire original incorporation of West Lake Hills because the error of the Trial Court in not so declaring is fundamental error.

While we are inclined to agree with this position we are not required to so hold for the reason that, in our opinion Plaintiffs who did plead for this relief are entitled to it.

 We have stated the facts under which we have held and hold again that Plaintiffs have an interest in this controversy separate and apart from any interest which the public in general may have and that under the circumstances present here they are entitled to collaterally attack the incorporation of West Lake Hills and are not dependent upon the discretion of the

State to bring or not to bring quo warranto proceedings in order that their vested property rights may not be taken from them without due process of law as guaranteed by Texas and Federal Constitutions.

 It is our opinion that the authorities clearly state the law to be that the question of the area to be included within a town or village is a legislative matter to be determined by the people concerned and that the Courts are without authority to redraw the boundaries of any town or village. It was so held as to Home Rule Cities in City of Houston v. State, ex rel. City of West University Place, 142 Tex. 190, 176 S.W.2d 928 (1943) the Court saying, "Now the power of a Home Rule City to fix its boundaries is the power to legislate. * * * This power of a Home Rule City to annex territory, being legislative power, is therefore not subject to being revised by the judicial power of the Courts." This is the same kind of power exercised by the original incorporators of West Lake Hills in incorporating the town and the town council in adopting annexation ordinances all under authority of law. The fact that their exercise of this power resulted in a nullity does not alter its nature.

In City of Irving v. Dallas County Flood Control District, 383 S.W.2d 571, Tex.Sup. Ct. (1964) an annexation case, the Court held, "It is not within the power of the courts to reframe ordinance No. 833 to eliminate therefrom territory which is not adjacent to the City of Irving."

In McCleskey v. State, 4 Tex.Civ.App. 322, 23 S.W. 518, Fort Worth, 1893, suit was brought to annul the incorporation of Iowa Park on the ground that too much vacant land was included. The incorporation was annulled, the Court saying: "It is no longer an open question that the statute (Sayles' Civil St. arts. 340a, 506–515) under which it was attempted to incorporate this town only authorized the incorporation of the town proper, and that an attempt to include an unreasonable amount of vacant land will have the affect to annul the attempted incorporation, not only as to that

part improperly included, but also as to the real town."

Several Supreme Court cases were cited to sustain this ruling.

See also State ex rel. Wilke v. Stein, 26 S.W.2d 182, 36 S.W.2d 698, Tex.Comm. of App. (1931).

In State ex rel. American Manufacturing Co. v. City of Fort Worth, 314 S.W.2d 335, Tex.Civ.App., Fort Worth, no writ (1958) the Court held:

"Since Ordinance No. 3418 was invalid as to a portion of the area attempted to be annexed, we think it was invalid as a whole. The whole ordinance pertained to no one single matter, i. e., the annexation of one certain described tract of land. * * *

Had Fort Worth known such territory had been annexed previously by Saginaw, it might or might not have annexed the remaining area, or it might or might not have annexed a part of the territory not included in the Town of Saginaw. That is a matter for the City Council of the City of Fort Worth to determine.

■ To be effective as to the territory exclusive of the Saginaw annexation, the ordinance would have to be reformed. An ordinance may not be reformed by judicial action."

The foregoing cases are peculiarly applicable here since the trial court found that "One of the reasons for using this narrow strip of land [a strip of land from Bee Creek to Isaac's Slough] was to include these people [living in the strip] within the City of West Lake Hills in order to get the required number of citizens to incorporate." If the strip that included "these people" had been eliminated from the act of incorporation, there very well might never have been any City of West Lake Hills.

West Lake Hills cites State ex rel. City of West Orange v. City of Orange, 300 S.W.2d 705, Tex.Civ.App., Beaumont, writ ref. n. r. e. (1957) as holding that an an-

nexation ordinance may be partially valid. The Trial Court there concluded, "6. That, insofar as concerns the territory sought to be annexed by both the City of Orange and the City of West Orange, the City of Orange first acquired jurisdiction over such territory, and, having first acquired such jurisdiction, the annexations thereof by the City of Orange are legal, and the attempted annexations by the City of West Orange, as to that part of the territory in conflict, but only as to the part in conflict, are without legal effect, and such territory constitutes a part of the City of Orange."

The City of Orange had asked the Court to hold void the charter of the City of West Orange on the ground that the territory therein described conflicted with territory previously annexed by the City of Orange. The City of Orange prevailed in the suit but limited on this point as above indicated. The City of Orange did not appeal but the City of West Orange did. The judgment of the Trial Court was affirmed.

In its opinion, the only reference to this matter was made when the Court stated the substance of the above copied Trial Court conclusion. The Court then stated, "We believe that the appellants have shown no error in the judgment of the trial court. We have read the entire statement of facts and examined the briefs of the parties, including a reply brief of the appellants, filed after submission, and are satisfied that all of the findings of fact and conclusions of law of the trial court as set forth in its judgment are supported by the record and by the authorities presented."

Certainly the Appellant, City of West Orange, did not assign error in not holding its entire charter void and no cross points or separate appeal by the City of Orange are shown. We have examined the application for writ of error filed by the City of West Orange and no question was presented in it as to the correctness of the conclusion of the Trial Court copied above. Under these circumstances, we cannot hold that this opinion controls the decisions upon which we rely. Orange may be persuasive

against the doctrine of fundamental error but our opinion is not predicated on it.

We have previously held that a town or village cannot consist of noncontiguous tracts and that any attempt to so incorporate a town or village is a nullity.

 It is unquestioned law that any attempt on the part of a town to include portions or all of another town within its boundaries is void. State ex rel. Binz v. City of San Antonio, 147 S.W.2d 551, Tex. Civ.App., San Antonio, writ ref. (1941).

The State of Texas and the City of Austin make this statement in their brief:

"It is apparent from the above authorities, that the action of the trial court was both unique and erroneous. So far as this party can determine, this represents the first time in the history of this State that a Court has attempted to change the boundaries of a city, valid or invalid, established by a public incorporation election. In this attempt to in part preserve the City of West Lake Hills, the trial court exceeded the boundaries of judicial power in this State even to the extent of infringing upon and usurping a power granted by the law of this State solely to the qualified voters of a town or village sought to be incorporated."

We agree that the Trial Court was in error in not decreeing the entire original incorporation of West Lake Hills to be null and void. Having reached this conclusion, it is unnecessary that we determine the validity of the various annexations attempted by the City of West Lake Hills. They fall since there is no annexing authority.

We reform the judgment of the Trial Court by decreeing the original incorporation of the City of West Lake Hills to be null and void ab initio in its entirety. As reformed, the judgment of the trial court is affirmed.

Reformed and as reformed affirmed.